STATE OF NEBRASKA AND STATE OF NEBRASKA ON
BEHALF OF Z.P., APPELLEES, V. ALBERT PORTER, DEFENDANT
AND THIRD-PARTY PLAINTIFF, APPELLANT, AND
ERIN STEPHENS, THIRD-PARTY DEFENDANT, APPELLEE.
610 N.W. 2d 23

Filed May 5, 2000.    No. S-98-968.

Gregory C. Damman for appellant.

David L. Kimble for appellee Erin Stephens.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN,
MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

This is a paternity action commenced by the State of
Nebraska pursuant to Neb. Rev. Stat. § 43-512.03 (Reissue
1998). Albert Porter appeals from an order of the district court
for Seward County, Nebraska, which determined that he was the
father of Z.P., born November 3, 1997, and required that he pay
child support in the amount of $356 per month commencing on
September 1, 1998. Porter, who was incarcerated when this
action was filed and tried, does not contest paternity but con-
tends that the district court erred in determining his earning

capacity for purposes of calculating his child support obligation. We conclude that child support was not determined in accordance with the Nebraska Child Support Guidelines and therefore reverse, and remand for further proceedings.

## BACKGROUND

In a petition for establishment of paternity and support filed April 21, 1998, the State alleged that Porter is the natural father of Z.P., a minor child born out of wedlock to Erin Stephens on November 3, 1997. Stephens was named in the petition as a third-party defendant. The State alleged that the child is dependent upon and in need of support from Porter and that he is capable of supporting the child by means of monthly payments, paying the cost of providing for her physical needs since birth, and providing ongoing health and hospitalization insurance or a health maintenance plan for the child. Based upon these allegations, the State prayed for a decree determining paternity and ordering the various types of support which it alleged Porter to be capable of providing. In his answer, Porter admitted all of the allegations of the petition except the allegation that he was capable of providing support to the child. Porter denied such capability for the reason that he was "currently incarcerated at the Nebraska Department of Correctional Services serving a one year sentence for third degree assault."

A child support determination hearing was conducted by the district court on September 2, 1998. Porter did not appear, but was represented by counsel. His admission of paternity was noted on the record. Called as a witness on behalf of the State, Stephens testified that she had provided care and support for the child since birth and that the child had not received any form of support from Porter. Stephens testified that Porter was incarcerated at the Nebraska State Penitentiary at the time of the hearing, but had previously held full-time employment. Christy Pankoke, a Seward County child support enforcement worker, identified a document showing Porter's income during 1996 and 1997, which was offered and received in evidence without objection. Pankoke also identified a child support worksheet she prepared which listed Porter's total monthly income from all sources as $2,023 and his monthly child support obligation as

$356. This document was received in evidence over Porter's foundational and hearsay objections. At the State's request, the court took judicial notice of the pleadings and other documents filed in the case. At the request of Porter's counsel, the court also took judicial notice of its own judgment and sentence filed on August 27, 1998, whereby Porter was found guilty in another case of first degree assault, a Class III felony, and sentenced to incarceration in an institution under the jurisdiction of the Nebraska Department of Correctional Services for a period of not less than 3 nor more than 6 years, with credit for 151 days served. The court also accepted the stipulation of the parties that Porter had been incarcerated since January 1, 1998. Porter offered no additional evidence and called no witnesses.

In a decree filed on September 4, 1998, the district court found that Porter was the father of Z.P. and that he owed a duty to provide support on her behalf. The court awarded custody to Stephens, subject to rights of visitation by Porter at reasonable times and places, and ordered Porter to "pay child support in accordance with the Nebraska Child Support Guidelines in the amount of $356.00 per month commencing on the first day of September, 1998," and continuing until the child reached the age of 19 or upon further order of the court. Porter perfected this timely appeal, which we removed to our docket on our own motion pursuant to our authority to regulate the caseloads of the appellate courts. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Porter assigns that the trial court erred in ordering him to pay child support of $356 per month while in prison based upon his earning capacity and that the trial court violated his equal protection rights in imposing the child support obligation against him based upon his earning capacity.

## STANDARD OF REVIEW

▪ The standard of review of an appellate court in child support cases is de novo on the record, and the decision of the trial court will be affirmed in the absence of an abuse of discretion. *Gress v. Gress*, 257 Neb. 112, 596 N.W.2d 8 (1999).

## ANALYSIS

Porter argues that the trial court violated his constitutional right to equal protection under the law when it imposed a child support obligation against him based upon his earning capacity when other similarly situated individuals would not have had such an obligation imposed. Although Porter objected to the child support worksheet on grounds of hearsay and insufficient foundation, he did not assert any objection or argument based upon an alleged denial of his equal protection rights. An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. *In re Interest of Kassara M.*, 258 Neb. 90, 601 N.W.2d 917 (1999). For this reason, we do not reach Porter's constitutional claim.

Porter's primary contention is that the district court erred in calculating his child support obligation on the basis of his preincarceration earning capacity because, while incarcerated, he lacked the present ability to earn income. The State did not file a brief on appeal, and we are therefore unaware of its position on this question. In Stephens' brief, she relies upon Neb. Rev. Stat. § 42-364(6) (Reissue 1998), which provides that "[i]n determining the amount of child support to be paid by a parent, the court shall consider the earning capacity of each parent . . . ." Stephens argues that based upon this statute, the district court was justified in basing its child support determination upon "the income that [Porter] could have earned if he had been able to work fulltime and was not incarcerated." Brief for third-party defendant and appellee at 6.

We have considered the child support obligation of an incarcerated parent in two prior cases. In *Sodders v. Sodders*, 210 Neb. 276, 313 N.W.2d 927 (1981), we affirmed an order denying an incarcerated noncustodial parent's application to reduce his child support obligation. The application was based upon a contention that his incarceration subsequent to the decree constituted a material change in his financial circumstances. We noted that the child support judgment of $450 per month was being paid out of a trust and concluded without elucidation that the trial court did not err in denying the application.

We again considered a noncustodial parent's application to modify his child support obligation because of incarceration

commencing after the decree in *Ohler v. Ohler*, 220 Neb. 272, 369 N.W.2d 615 (1985). In that case, the parent contended that his sentence to incarceration for a term of 15 years and his resulting lack of wages, assets, or other income constituted a material change in circumstances justifying modification. In affirming an order denying the application, we reasoned that cases involving the dissolution of marriage are equitable in nature, thus triggering the principle that in equity, one who seeks relief must come with clean hands. We wrote:

> It seems to us that where one seeks relief from the obligation to pay child support on the basis that he or she is incarcerated, the violation of the statute which resulted in the incarceration is directly connected with the matter of child support. Under those circumstances equity should not and will not act to give relief.

*Id.* at 276, 369 N.W.2d at 618. We then added:

> [O]ne's child support obligations should not be modified where the means with which to pay were reduced or eliminated by criminal activity . . . . Incarceration is certainly a foreseeable result of criminal activity; we find no sound reason to relieve one of a child support obligation by virtue of the fact that he or she engaged in criminal conduct. There is no reason those who have had to step in and assume the applicant's obligation should not be reimbursed by the applicant should his future position enable him to do so.

*Id.*

In a dissenting opinion, Chief Justice Krivosha wrote that incarceration resulting in the reduction or elimination of income should be considered a material change in circumstances which could support a modification. He reasoned:

> We obviously recognize that the child support judgment will not be paid during the time that the parent is incarcerated, and therefore the judgment will simply accrue with interest. Such a situation provides little or no benefit to anyone. The children do not receive the benefit of the proceeds during the time they require the funds, and the parent is simply confronted with a large, nondischargeable judgment upon release from prison, at a time when the prospect of paying a large judgment with interest is

extremely unlikely. At current interest rates the judgment will double every 6 or 7 years. How this can be in the children's best interest is difficult for me to imagine.

*Id.* at 277, 369 N.W.2d at 618-19. After noting that "a court should not be permitted to impose a judgment and itself make the payment of that judgment impossible," *id.* at 277, 369 N.W.2d at 619, the dissent concluded:

Certainly, if the evidence reflects that the incarcerated parent has any assets, those assets should first be made available for the support of the child. But where, as here, it is made clear that at the present time the incarcerated parent has no assets and can do nothing about paying the child support judgment, the district court should, at a minimum, be permitted to consider that fact and not be automatically barred as we have now held.

*Id.* at 279, 369 N.W.2d at 619.

*Ohler* is distinguishable from the present case in two respects. First, it addressed the question of whether incarceration constituted a material change in circumstances justifying modification of an existing child support order, whereas this case requires that we address the circumstance where a parent is incarcerated at the time of the initial determination of child support. Second, *Ohler* was decided prior to the adoption of the Nebraska Child Support Guidelines which were promulgated pursuant to Neb. Rev. Stat. § 42-364.16 (Reissue 1998) and apply to any child support matter adjudicated from and after October 1, 1987. See *Formanack v. Formanack*, 234 Neb. 325, 451 N.W.2d 250 (1990). See, also, *Sylvis v. Walling*, 248 Neb. 168, 532 N.W.2d 312 (1995) (holding child support guidelines applicable to determination of child support in paternity action).

The Nebraska Child Support Guidelines are applied as a rebuttable presumption, and all orders for child support shall be established in accordance with the provisions of the guidelines unless the court finds that one or both of the parties have produced sufficient evidence to rebut the presumption that the guidelines should be applied. *Rhoades v. Rhoades*, 258 Neb. 721, 605 N.W.2d 454 (2000); *Dueling v. Dueling*, 257 Neb. 862, 601 N.W.2d 516 (1999). The main principle underlying the Nebraska Child Support Guidelines is the "equal duty of both

parents to contribute to the support of their children in proportion to their respective net incomes." Nebraska Child Support Guidelines, paragraph A. The presumptive child support amount to be paid by the noncustodial parent is derived through an objective, mathematical process which begins with each parent's total monthly income from all sources, except means-tested public assistance benefits and payments received for children of prior marriages. Nebraska Child Support Guidelines, paragraph D. The guidelines further provide: "If applicable, earning capacity may be considered in lieu of a parent's actual, present income and may include factors such as work history, education, occupational skills, and job opportunities. Earning capacity is not limited to wage-earning capacity, but includes moneys available from all sources." *Id.*

Two other provisions of the Nebraska Child Support Guidelines are pertinent to our analysis. Paragraph I provides:

> **Minimum Support.** It is recommended that even in very low income cases, a minimum support of $50 per month be set. This will help to maintain information on such obligor, such as his or her address, employment, etc., and, hopefully, encourage such person to understand the necessity of supporting his or her children.

Paragraph R of the guidelines provides:

> **Basic Subsistence Limitation.** A parent's support, child care, and health care obligation shall not reduce his or her net income below the minimum of $696 net monthly for one person, or the poverty guidelines updated annually in the Federal Register by the U.S. Department of Health and Human Services under authority of 42 U.S.C. § 9902(2), *except minimum support may be ordered as defined in paragraph I., above.*

(Emphasis supplied.)

In the present case, it is undisputed that at the time of the child support determination, Porter had no "actual present income" due to his incarceration. The issue we must decide is whether his preincarceration earnings history can be considered "earning capacity" for purposes of applying the child support guidelines. In cases where we have approved the use of earning capacity instead of actual earnings in an initial determination

under the child support guidelines, there has been evidence that the parent had the present ability to achieve his or her earning capacity. For example, in *Betz v. Betz*, 254 Neb. 341, 575 N.W.2d 406 (1998), a noncustodial parent argued that the only evidence of his income was his military pension and that the trial court improperly imputed income to him from his operation of a bar. Finding that there was ample evidence that the parent worked a significant number of hours at the bar, we concluded that the trial court did not err in basing the obligation on the parent's earning capacity. We specifically noted that the parent was an able-bodied man who had demonstrated he was able to work. Similarly, in *Smith-Helstrom v. Yonker*, 249 Neb. 449, 544 N.W.2d 93 (1996), we instructed the trial court to impute income to the noncustodial parent commensurate with his earning capacity when he, by choice, worked only $5\frac{1}{2}$ months per year. In *Knippelmier v. Knippelmier*, 238 Neb. 428, 470 N.W.2d 798 (1991), we found that the trial court properly imputed income to the noncustodial parent when he admitted that he was able-bodied and capable of gainful employment. And in *State v. Smith*, 231 Neb. 740, 437 N.W.2d 803 (1989), a paternity proceeding, we held that the trial court properly based a noncustodial parent's child support obligation on his earning capacity rather than on his actual income, where it was shown that upon learning of the birth of the child, the father quit his salaried job and began working on his parents' ranch for no compensation other than room and board.

The Court of Appeals has treated "earning capacity" under the guidelines in a similar manner. In *Dworak v. Fugit*, 1 Neb. App. 332, 495 N.W.2d 47 (1992), the court held that the trial court properly imputed income to the noncustodial parent based upon his earning capacity where he had left his regular employment to start a cleaning business, significantly reducing his income. The court stated that the parent's "parental obligations may not permit him the luxury of promoting a new cleaning service and earning less than his demonstrated capacity." *Id.* at 336, 495 N.W.2d at 49. Similarly, in *In re Interest of Tamika S. et al.*, 3 Neb. App. 624, 628, 529 N.W.2d 147, 150 (1995), the court found that the trial court properly imputed income to the noncustodial parent based upon her earning capacity when the evi-

dence demonstrated that she worked only 30 hours per week in order to spend more time with her children and when she "presented no credible evidence that she was unable to work more than 30 hours per week."

Stephens argues that because Porter chose to commit the crime which resulted in his incarceration, he should not be excused from imputation of earnings consistent with his preincarceration earnings history for purposes of determining his child support obligation. This argument, however, ignores the fact that so long as he is incarcerated, it is impossible for Porter to realize his previous income. We conclude that when earning capacity is used as a basis for an initial determination of child support under the Nebraska Child Support Guidelines, there must be some evidence that the parent is capable of realizing such capacity through reasonable effort.

We therefore conclude that the district court erred in making its initial determination of child support based upon Porter's earnings prior to incarceration. His child support obligation while incarcerated should have been set at the minimum amount of $50 per month pursuant to paragraph I of the Nebraska Child Support Guidelines, unless he had prison wages, assets, or nonwage income which would support a higher amount. See, *Sodders v. Sodders*, 210 Neb. 276, 313 N.W.2d 927 (1981); Nebraska Child Support Guidelines, paragraph D ("[e]arning capacity is not limited to wage-earning capacity, but includes moneys available from all sources"). Whether Porter had such assets or income is not apparent from this record. Accordingly, we reverse, and remand to the district court with instructions to conduct an evidentiary hearing to determine the amount of Porter's assets and income from sources other than wages, if any, and to recalculate his child support obligation in accordance with such evidence and consistent with this opinion.

## CONCLUSION

For the reasons stated, we conclude that the district court abused its discretion in making an initial child support determination based upon an "earning capacity" which was impossible for Porter to realize during his incarceration. We therefore

reverse, and remand to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.