PAMELA JEAN RIGGS, APPELLANT, V.
GARY EUGENE RIGGS, APPELLEE.
622 N.W.2d 861

Filed March 9, 2001. No. S-99-1374.

Robert B. Creager, of Anderson, Creager & Wittstruck, P.C., for appellant.

Tracy A. Follmer, of Keating, O'Gara, Davis & Nedved, P.C., for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

The primary issue in this appeal is whether the earned income credit (EIC) under the federal Internal Revenue Code is a "means-tested public assistance benefit" for purposes of the Nebraska Child Support Guidelines (Guidelines), paragraph D, and therefore to be excluded as income in the calculation of child support. For the reasons stated below, we conclude that

the EIC is a "means-tested public assistance benefit" and should not be considered as income for purposes of calculating child support.

## FACTS

Pamela Jean Riggs (mother) and Gary Eugene Riggs (father) were divorced pursuant to a decree entered on August 15, 1997. In the original decree, the father was ordered to pay $959.61 per month in child support for the couple's two minor children. On March 26, 1999, the mother filed a petition for modification seeking an increase in child support based upon an increase in the father's income.

The modification action came on for trial on July 28, 1999. Evidence adduced at the modification hearing revealed that the father's income had increased from $56,000 annually at the time the parties were divorced in 1997 to $72,500 annually at the time of the modification hearing.

At the hearing, the mother and the father offered conflicting child support calculations. The main conflict relevant to this appeal was that the calculations differed with respect to the treatment of state and federal tax deductions as calculated under paragraph E of the Guidelines. The mother's proffered child support calculation worksheet deducted amounts for federal and state taxes from her gross income. The father submitted a child support calculation worksheet which deducted no federal or state taxes from the mother's gross income.

The father, who is a certified public accountant, testified that the mother is not required to have federal taxes withheld from her paycheck each month due to the mother's qualification for an EIC. The father testified that the mother could arrange it so that she would receive a small cash credit from the Internal Revenue Service (IRS) along with each paycheck due to her qualification for an EIC. The father claimed that allowing the mother to deduct any state or federal income tax from the mother's gross income in calculating child support would falsely represent her federal and state tax liability as she is refunded the full amounts she pays in such taxes each year. Further, the father asserted, not only is the mother refunded the amount of federal income tax she has withheld from her pay-

check, the mother receives a credit in the form of cash from the IRS due to her low income level and qualification for the EIC on her federal income tax return.

In its order dated September 13, 1999, the district court found that there was a material change in circumstances thereby warranting a modification in child support. The district court apparently agreed with the father's calculation of child support as it included the father's proffered child support calculation worksheet as an attachment to the court's order of modification. The court did not deduct state or federal taxes from the mother's income in calculating her net income, and the court's order does not state why there was no deduction for state and federal taxes. The district court determined that the father's child support obligation was to increase to $1,045.32 per month for the parties' two minor children and $716 per month when one minor child remained. The increase was to be effective as of August 1, 1999. The mother appealed.

## ASSIGNMENTS OF ERROR

The mother assigns that the district court erred in (1) failing to include her federal withholding tax liability as a deduction from income when calculating child support, (2) failing to make the increase in child support retroactive to the date of the mother's petition for modification, and (3) failing to award the mother reasonable attorney fees.

## STANDARD OF REVIEW

Modification of the amount of child support payments is entrusted to the discretion of the trial court, and although, on appeal, the issue is reviewed de novo on the record, the decision of the trial court will be affirmed absent an abuse of discretion. *Sears v. Larson*, 259 Neb. 760, 612 N.W.2d 474 (2000). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Brown v. Brown*, 260 Neb. 954, 621 N.W.2d 70 (2000).

■ On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Jones v. Paulson, ante* p. 327, 622 N.W.2d 857 (2001).

## ANALYSIS
### EARNED INCOME CREDIT

The primary question that the mother's first assignment of error presents is whether the EIC under the Internal Revenue Code is a "means-tested public assistance benefit" for purposes of paragraph D of the Guidelines and therefore should be excluded from the calculation of income for child support purposes.

Paragraph D of the Guidelines defines the total monthly income that each party shall list on the guideline worksheet, in relevant part, as follows: "D. Total Monthly Income. This is income of both parties derived from all sources, except all means-tested public assistance benefits and payments received for children of prior marriages. All income should be annualized and divided by 12."

The mother's income portion of child support guideline worksheet 1 was thus set forth:

| | | Mother | Father |
|---|---|---|---|
| 1. Total monthly income from all sources (except payments received for children of prior marriages and all means-tested public assistance benefits) | | 2,340.00 | 6,042.00 |
| 2. Deductions | | | |
| a. Taxes | Federal | 202.88 | 1,184.77 |
| | State | 45.26 | 306.13 |
| b. FICA | | 179.01 | 462.21 |
| c. Health insurance | | | 236.00 |
| d. Mandatory retirement | | | |
| e. Child support previously ordered for other children | | | |
| f. Total deductions | | 427.15 | 2,189.11 |
| 3. Monthly net income | | 1,912.85 | 3,852.89 |

The father's income portion of child support guideline worksheet 1, on the other hand, stated:

| | Mother | Father |
|---|---|---|
| 1. Total monthly income from all sources (except payments received for children of prior marriages and all means-tested public assistance benefits) | 2,390.00 | 6,042.00 |
| 2. Deductions | | |
| a. Taxes — Federal | | 1,333.70 |
| State | | 319.30 |
| b. FICA | 182.83 | 462.21 |
| c. Health insurance | | 236.17 |
| d. Mandatory retirement | | |
| e. Child support previously ordered for other children | | |
| f. Total deductions | | |
| 3. Monthly net income | 2,207.17 | 3,690.62 |

The mother asserts that the EIC is a means-tested public assistance benefit that should be excluded from the calculation of her income for purposes of child support under paragraph D of the Guidelines. Absent the EIC, the mother claims that she would have paid state and federal taxes in the amount deducted from her income as calculated on the mother's worksheet 1. Therefore, she argues that the amount of her tax liability, before the EIC is applied, should be deducted from her income because the amount of tax liability which is satisfied by the EIC is not to be excluded from her income if the credit is, in fact, a means-tested public assistance benefit.

The father argues, as he did in the district court, that the mother should not be allowed to deduct state and federal income tax from her gross income on worksheet 1. The father claims that such a deduction would falsely represent the mother's federal and state tax liability as she is refunded the full amount she pays in such taxes, plus some credit in the form of cash from the IRS due to her low income level and qualification for the EIC on her federal income tax return.

We must, therefore, first address whether the EIC is a "means-tested public assistance benefit" for purposes of paragraph D of the Guidelines. The Guidelines do not define the term "means-tested public assistance benefit." However, there is

a plethora of statutory and regulatory law that provides guidance to us in determining first the meaning of "public assistance benefit" and then the descriptive term "means-tested."

In federal law, the legislative history of the Welfare Reform Act of 1997 reveals that "public benefit" was originally defined as one that includes " 'cash, medical, housing, and food assistance and social services.' " *Aleman v. Glickman*, 217 F.3d 1191, 1194 n.2 (9th Cir. 2000) (quoting H.R. Rep. No. 104-725 (1996), *reprinted in* 1996 U.S.C.C.A.N. 2649). Also, Congress has enacted legislation which restricts aliens' access to welfare and public benefits. In so doing, Congress has defined "federal public benefit" to mean the following:

> (A) any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States; and
>
> (B) any retirement, welfare, health, disability, public or assisted housing, postsecondary education, food assistance, unemployment benefit, or any other similar benefit for which payments or assistance are provided to an individual, household, or family eligibility unit by an agency of the United States or by appropriated funds of the United States.

8 U.S.C. § 1611(c)(1) (Supp. V 1999).

One jurisdiction, the District of Columbia, defines "public assistance" as " 'payment in or by money, medical care, remedial care, goods or services to, or for the benefit of, needy persons.' " *Committee of Blind Vendors v. District of Columbia*, 28 F.3d 130, 132 n.2 (D.C. Cir. 1994) (quoting D.C. Code Ann. § 3-201.1(6) (2000)). Another state, Kentucky, defines public assistance as "money grants, assistance in kind, or services to or for the benefit of needy aged, needy blind, needy permanently and totally disabled persons, needy children, or persons with whom a needy child lives or a family containing a combination of these categories." Ky. Rev. Stat. Ann. § 205.010(3) (Lexis 1998). These sensible definitions guide us to our determination that for purposes of paragraph D of the Guidelines, a "public assistance benefit" is one that includes a payment in money, or by assistance in kind, to, or for the benefit of, a needy person.

Similarly, in determining whether such a benefit is "means-tested," we find the U.S. Department of Health and Human

Services interpretation of the phrase "federal means-tested public benefit" to be instructive on this point: "a program is considered 'means-tested' if eligibility for the program's benefits, or the amount of such benefits, or both, are determined on the basis of income or resources of the eligibility unit seeking the benefit." Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA); Interpretation of "Federal Means-Tested Public Benefit," 62 Fed. Reg. 45,256, 45,257 (August 26, 1997). Put more succinctly, "[g]reater earnings yield less assistance. This is what it means to say that a program is means-tested . . . ." *Vaughn v. Sullivan*, 83 F.3d 907, 908 (7th Cir. 1996). With this in mind, we conclude that a benefit is "means-tested" if (1) eligibility for the benefit or (2) the amount of the benefit is determined on the basis of the income or resources of the parent, such that the benefit decreases as the parent's income increases.

 Therefore, for purposes of paragraph D of the Guidelines, we hold that a "means-tested public assistance benefit" is a benefit that includes a payment in money, or by assistance in kind, to, or for the benefit of, a person where (1) the eligibility for the benefit or (2) the amount of the benefit is determined on the basis of the income or resources of the recipient, such that the benefit decreases as the recipient's income increases. Applying this holding to the instant case, we determine that the EIC is a means-tested public assistance benefit under paragraph D of the Guidelines.

As noted above, the mother qualifies for the EIC on her federal tax return. "The earned-income credit was enacted to reduce the disincentive to work caused by the imposition of Social Security taxes on earned income (welfare payments are not similarly taxed) . . . and to provide relief for low-income families hurt by rising food and energy prices." *Sorenson v. Secretary of Treasury*, 475 U.S. 851, 864, 106 S. Ct. 1600, 89 L. Ed. 2d 855 (1986). Thus, though it is given effect through the tax laws, the earned income credit is in substance an item of social welfare legislation, intended to provide low income families with " 'the very means by which to live.' " *In re Searles*, 445 F. Supp. 749, 753 (D. Conn. 1978) (quoting *Goldberg v. Kelly*, 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970)).

In discussing the nature of the EIC, it is constructive to note that the EIC is clearly distinguishable from a tax refund. While a tax refund returns to the taxpayer any overpayment of taxes withheld from wages, the earned income credit is a grant unrelated to the amount of taxes owed. *In re Brown*, 186 B.R. 224 (Bankr. W.D. Ky. 1995). "The earned income credit is given effect through a refund, but it is not a refund of taxes previously paid." *In re Searles*, 445 F. Supp. at 752. If the EIC exceeds a person's tax liability, he or she receives the excess in the form of cash from the IRS as if it were an overpayment of taxes in that amount. This is known as a refundable credit. See, *Sorenson v. Secretary of Treasury, supra*; *Peterson v. H & R Block Tax Services, Inc.*, 22 F. Supp. 2d 795 (N.D. Ill. 1998).

It is clear from its nature that the EIC fits the definition of a public assistance benefit. The credit is given regardless of the amount of tax owed and is a grant of money which is applied to a taxpayer's tax liability, and any excess will be given directly to the taxpayer due to the refundable nature of the credit. See *Sorenson v. Secretary of Treasury, supra*.

It is equally clear that the EIC is means-tested. The amount of the credit decreases as the amount of the taxpayer's earnings increase. See I.R.C. § 32 (1994 & Supp. III 1998). See, also, *Sorenson v. Secretary of Treasury, supra*. Further, we find it significant that the EIC is given to the taxpayer as a refundable credit. If it were a nonrefundable credit, then a taxpayer who owes little or no taxes would be eligible for only that portion of the credit which would reduce the taxpayer's tax liability to zero. Because of the EIC's nature, if the taxpayer's tax liability is zero, he or she would nonetheless receive the credit in the form of cash from the IRS.

Therefore, we conclude that the district court abused its discretion when it did not treat the mother's EIC as a "means-tested public assistance benefit" for purposes of paragraph D of the Guidelines. Before we proceed to calculate the child support in the instant case, however, we must address one other matter raised by the mother in this appeal.

Separate and apart from the EIC, the mother makes a cursory claim that her federal income tax credit for child care is a means-tested public assistance benefit that also should be

excluded from the calculation of her income for purposes of child support under paragraph D of the Guidelines. Tax credit for child care, however, is treated differently than the EIC and is specifically considered in paragraph N of the Guidelines, to wit:

> Child-care expenses are not specifically computed into the guidelines amount and are to be considered independently of any amount computed by use of these guidelines. Child-care expenses for the child for whom the support is being set, which are due to employment of either parent or to allow the parent to obtain training or education necessary to obtain a job or enhance earning potential, shall be divided between the parents in proportion to their parental contribution (worksheet 1, line 6) and shall be added to the basic support obligation computed under these guidelines. *The value of the federal income tax credit for child care may be subtracted from actual costs to arrive at a figure for net child-care expenses.*

(Emphasis supplied.)

■ We determine that, because paragraph N provides treatment for the value of the federal income tax credit for child care, the child-care credit should not again be considered in the calculation of income under paragraph D of the Guidelines. In the case at bar, there is evidence that the father pays a portion of the child-care expenses pursuant to the couple's property settlement agreement, which is not in the record. Under paragraph N, the child-care credit should have been taken into account when calculating the net amount the father owes for child-care expenses. The record, however, does not show whether the child-care credit was considered in determining the parties' child-care obligations. Without a complete record, we are unable on de novo review to determine whether the child-care credit was properly considered when figuring the net child-care liabilities of each party under paragraph N. Nonetheless, because of paragraph N, determining whether the child-care credit is a means-tested public assistance benefit for purposes of paragraph D of the Guidelines is not necessary as the credit's benefit to the parties is already taken into account by the Guidelines.

Having concluded that the district court erred when it did not treat the mother's EIC as a "means-tested public assistance ben-

efit" for purposes of paragraph D of the Guidelines, we must now calculate the parties' child support obligations in our de novo review of the record. In the instant case, the mother's tax liability is satisfied, independent of any taxes she has withheld from her paycheck, by operation of the EIC for which she qualifies. Although, on her tax return, the mother's tax liability is reduced or eliminated by virtue of the EIC, such reduction of her tax liability is not to be included in the calculation of child support because such reduction is attributable only to the EIC, which is a means-tested public assistance benefit. Thus, in using worksheet 1 from the Guidelines, we include the mother's federal tax liability, prior to the deduction of the EIC, on the line designated for the federal tax deduction (see worksheet below). The mother's "[s]tandard deductions applicable to the number of exemptions provided by law will be used to establish the amount of federal and state income taxes." See Guidelines, paragraph E1. Thus, in utilizing the standard deductions provided under the state and federal tax codes in effect on the date of the trial, we find, in our de novo review, that worksheet 1 is properly computed as follows:

| | | Mother | Father Combined |
|---|---|---|---|
| 1. Total monthly income from all sources (except payments received for children of prior marriages and all means-tested public assistance benefits) | | 2,340.00 | 6,042.00 |
| 2. Deductions | | | |
| a. Taxes | Federal | 264.13 | 1,062.30 |
| | State | 68.41 | 296.82 |
| b. FICA | | 179.01 | 462.21 |
| c. Health insurance | | | 236.00 |
| d. Mandatory retirement | | | |
| e. Child support previously ordered for other children | | | |
| f. Total deductions | | 511.55 | 2,057.33 |
| 3. Monthly net income | | 1,828.45 | 3,984.67 |
| 4. Combined monthly net income | | 5,813.12 | |
| 5. Combined annual net income | | 69,757.44 | |

| | | |
|---|---|---|
| 6. Percent contribution of each parent | 31.3% | 68.7% |
| 7. Monthly support from table 1 | | 1,673.84 |
| 1,672.00 1,679.00 | | |
| 8. Each parent's share | 526.49 | 1,147.35 |

We, therefore, conclude that the father's child support obligation is to increase to $1,147.35 per month for the parties' two minor children and, utilizing worksheet 4, to $785.75 per month when one child remains in the household.

## RETROACTIVE MODIFICATION

The mother also claims that the father's increased child support obligation should be instituted as of the date that she filed for the modification, rather than on August 1, 1999, the first day of the month after the modification trial. The sometimes stated, and less often applied, rule in Nebraska has been to allow a modification of a child support order prospectively from the time of the modification order itself. See *Reinsch v. Reinsch,* 8 Neb. App. 852, 602 N.W.2d 261 (1999), *aff'd* 259 Neb. 564, 611 N.W.2d 86 (2000) (citing *Maddux v. Maddux,* 239 Neb. 239, 475 N.W.2d 524 (1991)). Depending on the equities of the situation, the modification of a child support order has been applied retroactively to the filing date of the application for modification. See, *Faaborg v. Faaborg,* 254 Neb. 501, 576 N.W.2d 826 (1998); *Wulff v. Wulff,* 243 Neb. 616, 500 N.W.2d 845 (1993).

The Nebraska Court of Appeals has long followed the above line of cases in determining whether the granting or failure to grant retroactive modification was proper depending on the equities of each case. See, *Sneckenberg v. Sneckenberg,* 9 Neb. App. 609, 616 N.W.2d 68 (2000) (finding no abuse of discretion when district court granted retroactive modification to date 6 months after petition was filed and 7 months before entry of order); *Reinsch v. Reinsch, supra* (holding that increase should be retroactive to date of filing when order of modification was almost 1 year after filing for modification so that penalization of child and custodial parent can be avoided); *Cooper v. Cooper,* 8 Neb. App. 532, 598 N.W.2d 474 (1999) (finding abuse of discretion in awarding retroactive modification in absence of bad faith when parent does not have ability to pay retroactive sup-

port and has met current obligations); *Dean v. Dean,* 4 Neb. App. 914, 552 N.W.2d 310 (1996) (holding that modification should have been made retroactive to first month after date of filing for modification); *Lebrato v. Lebrato,* 3 Neb. App. 505, 529 N.W.2d 90 (1995) (holding that increase in support should have been made retroactive to date of filing for modification); *State ex rel. Crook v. Mendoza,* 1 Neb. App. 180, 491 N.W.2d 62 (1992) (holding that modification should be made retroactive to date that original ruling on modification was made by district court to avoid penalizing children and custodial parent for delay present in appeal process). But see *Robbins v. Robbins,* 3 Neb. App. 953, 536 N.W.2d 77 (1995) (upholding district court's refusal to make *reduction* in child support retroactive to date of filing for modification).

The main principle behind the child support guidelines is to recognize the equal duty of both parents to contribute to the support of their children in proportion to their respective net incomes. See Guidelines, paragraph A. See, also, *State v. Porter,* 259 Neb. 366, 610 N.W.2d 23 (2000). We also recognize that the paramount concern and question in determining child support, whether in the initial marital dissolution action or in proceedings for modification of a decree, is the best interests of the child. *Sabatka v. Sabatka,* 245 Neb. 109, 511 N.W.2d 107 (1994). The child and custodial parent should not be penalized, if it can be avoided, by the delay inherent in our legal system. See *Reinsch v. Reinsch, supra.* Therefore, the rule, absent equities to the contrary, should generally be that the modification of a child support order should be applied retroactively to the first day of the month following the filing date of the application for modification.

We emphasize that the initial determination regarding the retroactive application of the modification order is entrusted to the discretion of the trial court, and the decision of the trial court will be affirmed absent an abuse of discretion. See *Sears v. Larson,* 259 Neb. 760, 612 N.W.2d 474 (2000). There are circumstances, for example, when a noncustodial parent may not have the ability to pay retroactive support and meet current obligations. However, the general rule of applying modification of child support orders retroactively to the first day of the month following the filing date of the application for modification is

intended to clarify the law and to more accurately reflect the practice regarding the effective date of child support modification orders.

In the instant case, the mother filed her petition seeking a modification of the decree and an increase of child support on March 26, 1999. On April 22, the mother sent a request for production of documents to the father's first attorney. The father's first attorney did not forward the mother's request for documents to the father until May 28. Due to the lengthy delay in the father's response, on June 21, the mother filed a motion to compel the production of the requested documents, and the motion was withdrawn on July 9 at the request of the mother's attorney. The trial in this matter occurred on July 28, and the district court entered its order of modification on September 13.

We determine that the equities involved in this case require that the modified support obligation become effective as of April 1, 1999, the first day of the month following the date of the filing of the mother's petition for modification. The children in this case should not be penalized by the delay inherent in the legal process, nor should the noncustodial parent gratuitously benefit from the delay. The main principle behind the child support guidelines is to recognize the equal duty of both parents to contribute to the support of their children in proportion to their respective net incomes. See Guidelines, paragraph A. See, also, *State v. Porter, supra.* Given that the father has been steadily employed as a certified public accountant since at least the time of the parties' divorce in 1997 and is earning a substantial salary, we find that the increase in his child support obligation should be retroactive to April 1, 1999.

### ATTORNEY FEES

The mother's final assignment of error is that the district court abused its discretion in not awarding attorney fees in the instant action. In an action for modification of a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. See, *Groseth v. Groseth*, 257 Neb. 525, 600 N.W.2d 159 (1999); *Hoshor v. Hoshor*, 254 Neb. 743, 580 N.W.2d 516 (1998).

Even though the mother prevailed in obtaining an increase in child support, we note in our de novo review of the record that the road to the modification hearing was not entirely smooth on the part of either party. In 1997, the district court ordered the mother to execute and deliver appropriate forms to the father each year so that he could claim the child dependency exemptions for their two children. On June 1, 1999, the father filed a motion for order to show cause due to the mother's failure to sign and deliver the appropriate forms for the tax year 1998. A hearing was held on July 15, and on July 16, the district court found that the mother had willfully and continuously violated the order of the court by not signing the appropriate forms. The district court determined that the mother could purge herself of the contempt by signing the forms by the date of the modification trial on July 28. The mother signed the forms prior to July 28.

The district court heard and observed both parties during the course of the modification proceedings, and we cannot say, based on this record, that the district court abused its discretion in not awarding attorney fees to the mother in the instant case.

## CONCLUSION

For the reasons stated above, we conclude that the district court abused its discretion (1) in failing to include the mother's tax liability as a deduction from income when calculating child support and (2) in not making the child support modification retroactive to April 1, 1999. We find no abuse of discretion in not awarding attorney fees to the mother. Therefore, we modify the father's child support obligation, effective April 1, 1999, to $1,147.35 per month for the parties' two minor children and $785.75 per month when one child remains in the household. The judgment of the district court is affirmed as modified.

AFFIRMED AS MODIFIED.

HENDRY, C.J., not participating.