IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


YEUTTER V. BARBER


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


KRISTEN K. YEUTTER, APPELLEE,

V.

JESSE D. BARBER, APPELLANT.


Filed January 19, 2021.    No. A-19-993.


Appeal from the District Court for Sarpy County: NATHAN B. COX, Judge. Affirmed in part, and in part reversed and remanded with directions.

Matthew Stuart Higgins, of Higgins Law, for appellant.

Donald L. Schense, of Law Office of Donald L. Schense, for appellee.


MOORE, Chief Judge, and BISHOP and WELCH, Judges.

WELCH, Judge.

### INTRODUCTION

Jesse D. Barber appeals the Sarpy County District Court order modifying the visitation and child support portions of an earlier paternity decree. For the reasons set forth herein, we affirm in part and in part reverse and remand with directions.

### STATEMENT OF FACTS

Barber and Kristen K. Yeutter are the parents of Jace C. Barber, born in 2014. In June 2017, Barber filed a complaint for modification of the parties' paternity decree seeking, among other things, joint legal and joint physical custody of Jace; specific parenting times of the parties including appropriate times and numbers for telephone access; and a transition plan to include the time and places for transfer of Jace, method of communication or amount and type of contact between the parties during transfers, and duties related to transportation of Jace during transfers.

- 1 -

On July 24, Yeutter filed an answer and cross-complaint for modification seeking, among other things, sole legal and physical custody of Jace; child support, health insurance, and childcare expenses; that any parenting time awarded to Barber be supervised; and requested that such amounts be awarded retroactively. On July 26, the district court entered an order granting Barber temporary visitation from "Saturday, one week from 9:00 a.m. to 5:00 p.m.; Sunday the following week, from 9:00 a.m. to 5:00 p.m."

At the time of the March 2019 trial, Jace was 4 years old. Yeutter testified that she has been Jace's sole financial provider and she has nurtured him and taken care of him on a daily basis. Yeutter works full time as a registered nurse and director of nursing earning $86,000 at the time of trial, which had increased from $66,000 when the proceedings were initiated.

Yeutter testified that she has never received any child support from Barber. Jace attends daycare and preschool costing $600 per month. Barber paid half of work-related childcare from January 1, 2017, until his incarceration on November 20, 2018. Since that time, Yeutter has paid the entire costs associated with work-related childcare.

At the time of trial, Barber had been convicted of the first-degree sexual assault of Yeutter's daughter and had been sentenced to 10 to 12 years' imprisonment. Barber's affidavit, which was admitted as an exhibit, set forth that prior to his incarceration, he was employed as a carpenter earning $2,500 per month. However, Barber's mother testified that Barber had been employed as a deck builder earning $18 per hour. Yeutter testified that Barber had been making $20 per hour plus side jobs. After Barber's incarceration on November 20, 2018, his monthly income was reduced to $30.

Barber's mother testified that she has power of attorney over Barber's financial affairs; she is familiar with the extent of Barber's financial estate; and that Barber does not own any real estate, automobiles, or personal property valued at over $50 except a couch that might exceed that amount. However, she admitted that she and her husband paid off the $5,040 loan on Barber's Dodge SUV which was still listed in Barber's name.

Barber's mother testified that Barber was actively involved in Jace's life prior to Barber's incarceration, always exercised the visitation he was allowed, and petitioned for additional visitation. Barber's mother also testified that she visits Barber weekly at the Nebraska State Penitentiary and that:

When we visit him, there are other inmates there that have their children there and get to interact, and it breaks his heart. My son cries when he watches them. It's heart wrenching. I'm trying to keep him informed of what's going on, you know, and any bit of interaction that we have with our grandson, and I mean it's hard for him. I feel it is necessary so he doesn't just totally lose 5 years of [Jace's] life, but it's hard on him. And he can't . . . talk to him.

Yeutter testified that Jace is not aware that Barber is incarcerated and that she is reluctant to be involved in communications between Jace and Barber because of Barber's criminal activity, which resulted in Barber's incarceration. However, Jace still communicates with his paternal grandparents via Facetime and has had two day-long visits with them. Yeutter opined that it might

be reasonable to have Jace's paternal grandparents facilitate Jace's communication with Barber. Yeutter testified:

> My thoughts are that . . . due to the nature of [Barber's] crime and the fact that [his crime] involves a child of mine, any communication with Jace and [Barber] take place while Jace is with his [paternal] grandparents. And any letters can be sent to [Barber's] mom and . . . any photos [of Jace] can be sent [to Barber] by his mom, because Jace will continue to have a relationship with his grandparents.

However, Yeutter was not willing to commit to any specific visitation schedule with Jace's paternal grandparents as she was taking things "day by day," nor was she willing to commit to "any kind of relationship" between Jace and Barber. Yeutter was willing to send photos of Jace, send photos of grade reports once Jace starts school to Barber's mother, and agreed to show Jace any letters and cards sent to him by Barber.

In September 2019, the Sarpy County District Court entered a modification decree in which it found that Barber failed to meet his burden establishing a material change of circumstances; however, the court found that Yeutter did meet her burden of establishing a material change of circumstances due to Barber's November 2018 sentencing to 10 to 12 years' imprisonment for first degree sexual assault. The court awarded Yeutter legal and physical custody of Jace; ordered Barber to pay $50 per month in child support starting on January 1, 2019; and ordered Barber to pay retroactive child support of $516 per month from August 1, 2017, to December 1, 2018. The parenting plan attached to the court's modification decree set forth, in pertinent part:

> Because the noncustodial parent is in custody with the Nebraska Department of Corrections for the next five to six years, the court has created this Parenting Plan, pursuant to the requirements of the Nebraska Parenting Act.
>
> . . . .
>
> The Court is not aware of any facts that would make the noncustodial parent an unfit or improper person to be involved in the parenting of the minor child(ren). However given the noncustodial parent's inability to actively participate in these proceedings due to his incarceration, the court is uncertain of the noncustodial parent's ability or willingness to be actively involved in the parenting of the minor child(ren). As such, the court has set forth the general parenting plan detailed below.
>
> . . . .
>
> 2. The noncustodial parent may have parenting time with the minor child(ren) during the following times: each weekend, each holiday (including all secular and religious holidays), and each summer, provided that the noncustodial parent provides reasonable notice and advance request to the custodial parent and the custodial parent agrees with the noncustodial parent's request. If there is not [an] agreement, the parents shall follow the provisions of remediation below.
>
> 3. The noncustodial parent shall, upon reasonable request to the custodial parent, have telephone parenting time with the minor child(ren) of no less than 15 minutes each week.
>
> . . . .

REMEDIATION PROCESS REGARDING FUTURE
MODIFICATION TO THIS PARENTING PLAN

In the event the noncustodial parent becomes actively involved in parenting the minor child(ren) and one or both of the parties wish to change the terms of this plan in the future, if the parties are unable to agree on the terms of such change, the parties shall attempt to mediate their disagreements by talking to a third person or persons who may be able to help the parties come to an agreement. This third person or persons need not be formally trained in mediation, although the parties are encouraged to talk to a trained mediator if possible.

Barber has timely appealed the decision of the district court.

## ASSIGNMENTS OF ERROR

On appeal, Barber contends that the district court erred in finding that (1) a material change of circumstances existed to modify his child support obligation resulting in an order for him to pay retroactive and prospective child support, and (2) in granting discretion to the child's mother to allow visitation as provided in the court order and providing the mechanism for resolving disputes through mediation which Barber alleges is unavailable to him due to his incarceration.

## STANDARD OF REVIEW

Modification of child support is entrusted to the discretion of the trial court. *Hotz v. Hotz*, 301 Neb. 102, 917 N.W.2d 467 (2018). See, also, *State on behalf of A.E. v. Buckhalter*, 273 Neb. 443, 730 N.W.2d 340 (2007). Similarly, whether a child support modification order should be retroactive is entrusted to the discretion of the trial court and will be affirmed absent an abuse of discretion. *Wilkins v. Wilkins,* 269 Neb. 937, 697 N.W.2d 280 (2005). An appellate court reviews proceedings for modification of child support de novo on the record and will affirm the judgment of the trial court absent an abuse of discretion. *Hotz v. Hotz, supra.* A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id.*

The initial determination regarding the retroactive application of a modification order is entrusted to the discretion of the trial court and will be affirmed on appeal absent an abuse of discretion. *Riggs v. Riggs*, 261 Neb. 344, 622 N.W.2d 861 (2001); *Roberts v. Roberts*, 25 Neb. App. 192, 903 N.W.2d 267 (2017).

## ANALYSIS

### CHILD SUPPORT

Barber first contends that the district court erred in finding that a material change of circumstances existed which justified modifying his child support obligation.

We begin our analysis here by reiterating that it is incumbent on the party appealing to present a record that supports the errors assigned; absent such a record, as a general rule, the decision of the lower court as to those errors will be affirmed. *JCB Enters. v. Nebraska Liq. Cont. Comm.*, 275 Neb. 797, 749 N.W.2d 873 (2008). In its decree, the district court found that, due to Barber's incarceration, a material change of circumstances occurred since the entry of the

November 17, 2016, decree and that decree should be modified accordingly. The district court then awarded sole physical and legal custody to Yeutter and ordered Barber to pay child support pursuant to the child support guidelines that the court calculated and attached to its order as exhibit B.

Barber now argues that under the November 17, 2016, decree, he was not obligated to pay child support and that it defies logic to suggest that a material change has taken place which justifies him paying child support now that he is incarcerated and his income is negligible. That said, Barber failed to include the November 17, 2016, decree in the record which leaves this court with no ability to determine what child support obligation was awarded previously or the basis upon which the court made that original support determination. Without this order, this court simply cannot compare the former order to the court's modification order to determine what justified the court's conclusion that a change in circumstances occurred here.

Regardless of the lack of record, to the extent that Barber is arguing that it was error for the court to require a support obligation while Barber is incarcerated, the Nebraska Supreme Court has taken a different view. In *State v. Porter*, 259 Neb. 366, 610 N.W.2d 23 (2000), the Nebraska Supreme Court held that an incarcerated parent should be ordered to pay child support but that the child support order could not be based upon the parent's earning capacity prior to incarceration where there was no evidence that the parent is capable of realizing such capacity through reasonable effort. The court then set the inmate's child support obligation "at the minimum amount of $50 per month pursuant to paragraph I of the Nebraska Child Support Guidelines, unless he had prison wages, assets, or nonwage income which would support a higher amount." *State v. Porter*, 259 Neb. at 374, 610 N.W.2d at 29. (We note that effective January 1, 2020, Nebraska Child Support Guidelines § 4-209 was amended to provide in part, that "[e]ven in very low income cases, except in cases of disability or incarceration where a lower amount may be justified, a minimum monthly support of $50, or 10 percent of the obligor's net income, whichever is greater, per month should be set." This amendment occurred after the relevant proceedings in the instant case.)

Accordingly, Barber's incarceration does not, in and of itself, relieve him of his child support obligation. See *State v. Porter, supra*. Further, Barber does not specifically challenge the court's calculation of the retroactive or future child support ordered; he challenges only that any child support was ordered at all in light of his incarceration. As already discussed, Barber's incarceration alone does not eliminate his obligation to pay some child support. See *id*. See also § 4-209. Further, because we are unable to determine whether the new support obligation acted as a material change in circumstances in relation to the prior decree, the district court's decision as to that assigned error is affirmed. See *JCB Enters. v. Nebraska Liq. Cont. Comm., supra*.

Barber's argument that the district court erred in finding that a material change in circumstances occurred which justified a change in child support fails.

VISITATION

Barber's second assignment of error is that the district court erred in granting discretion to Yeutter to allow visitation as provided in the court order and in allowing the mechanism for resolving disputes through mediation that Barber alleges is unavailable to him due to his incarceration.

A trial court has a nondelegable duty to determine questions of custody and parenting time of minor children according to their best interests. *VanSkiver v. VanSkiver*, 303 Neb. 664, 930 N.W.2d 569 (2019). The authority to determine custody and visitation cannot be delegated because it is a judicial function. *State on behalf of Ryley G. v. Ryan G.*, 306 Neb. 63, 943 N.W.2d 709 (2020); *VanSkiver v. VanSkiver, supra*.

This court explained in *Schmeidler v. Schmeidler*, 25 Neb. App. 802, 812-13, 912 N.W.2d 278, 287-88 (2018), *disapproved on other grounds, State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019):

> [The trial court's responsibility to determine questions of custody and visitation of minor children] is an independent responsibility and cannot be controlled by the agreement or stipulation of the parties themselves or by third parties. *Deacon v. Deacon,* 207 Neb. 193, 297 N.W.2d 757 (1980), *disapproved on other grounds, Gibilisco v. Gibilisco,* 263 Neb. 27, 637 N.W.2d 898 (2002). In *Deacon v. Deacon, supra,* the Supreme Court reversed an order which granted a psychologist the authority to effectively determine visitation and to control the extent and time of such visitation, concluding that such an order was an unlawful delegation of the trial court's duty that could result in the denial of proper visitation rights of the noncustodial parent. As authority for its conclusion, the *Deacon* court cited *Lautenschlager v. Lautenschlager,* 201 Neb. 741, 272 N.W.2d 40 (1978). In *Lautenschlager,* the court observed: "The rule that custody and visitation of minor children shall be determined on the basis of their best interests, long established in case law and now specified by statute, clearly envisions an independent inquiry by the court. The duty to exercise this responsibility cannot be superseded or forestalled by any agreements or stipulations by the parties." 201 Neb. at 743-44, 272 N.W.2d at 42.

> The Supreme Court in *Deacon* specifically took note that the reasoning of *Lautenschlager* was being extended to third parties. The reasoning of *Deacon* has also been applied in other contexts. See, *In re Interest of D.M.B.,* 240 Neb. 349, 481 N.W.2d 905 (1992) (finding plain error in juvenile court's requirement that parent participate in support group and follow all directions of counselor); *Ensrud v. Ensrud,* 230 Neb. 720, 433 N.W.2d 192 (1988) (disapproving of district court order authorizing child custody officer to control custody and visitation rights of minor child) [*disapproved on other grounds, State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019)]; *In re Interest of Teela H.,* 3 Neb. App. 604, 529 N.W.2d 134 (1995) (holding that juvenile court order granting psychologist authority to determine time, manner, and extent of parental visitation was improper delegation of judicial authority).

> In *Barth v. Barth,* 22 Neb. App. 241, 851 N.W.2d 104 (2014), this court disapproved of the district court's order granting the child's father, the custodial parent, the discretion to withhold overnight visitation with the child's mother, the noncustodial parent, if she cohabits with someone of the opposite sex. We concluded that the rationale of the aforementioned cases applies with equal force when it is the custodial parent who is granted the authority to determine the visitation privileges of the noncustodial parent, because setting the time, manner, and extent of visitation is solely the duty of the court. The same holds true in the present case.

Here, the district court's modification order provided in part:

> 2. The noncustodial parent may have parenting time with the minor child(ren) during the following times: each weekend, each holiday (including all secular and religious holidays), and each summer, provided that the noncustodial parent provides reasonable notice and advance request to the custodial parent and the custodial parent agrees with the noncustodial parent's request. If there is not [an] agreement, the parents shall follow the provisions of remediation below.

> 3. The noncustodial parent shall, upon reasonable request to the custodial parent, have telephone parenting time with the minor child(ren) of no less than 15 minutes each week.

The language of the district court's order provides that Barber may have parenting time if Yeutter "agrees with [Barber's] request." This order, by its terms, improperly delegates to Yeutter the effective authority to determine whether Barber is allowed to exercise visitation with Jace. Accordingly, we reverse the court's order pertaining to parenting time and remand with directions that the court enter an order, specifically setting forth the time, manner, and extent of parenting time awarded to Barber. In doing so, the court should consider appropriate factors including, but not limited to, Barber's relationship with Jace prior to Barber's incarceration, the impact of Barber's incarceration on Jace, Jace's best interests regarding visiting Barber in prison, and/or other means available to allow contact between Jace and Barber during the time that Barber is in prison including whether visits should be in person and/or telephonic or by other means and how often the visits should occur.

## CONCLUSION

In sum, we find that Barber's argument that the district court erred in finding that a material change in circumstances justified a change in child support fails. However, concerning the portions of the court's order regarding visitation, we find that the district court abused its discretion and we reverse and remand with directions.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.