■ In the Matter of CATHERINE J. L. PHELPS, Respondent, v DAVID J. LA POINT, Appellant. [725 NYS2d 461] —Carpinello, J. Appeals (1) from an order of the Family Court of Warren County (Hemmett, Jr., J.), entered December 10, 1999, which, *inter alia*, granted petitioner's application, in a proceeding pursuant to Family Court Act article 4, to find respondent in violation of a prior order of child support, and (2) from an order of said court, entered May 24, 2000, which awarded counsel fees to petitioner.

The parties to this proceeding have been divorced since 1989 and are the parents of two boys. At issue are two orders of Family Court upholding a Hearing Examiner's determination that respondent willfully violated a 1996 child support order obligating him to pay $100 per week for his sons and further denying his application for a downward modification of child support. Upon our review of the voluminous record in this matter, and particularly upon giving due consideration to the Hearing Examiner's detailed decision wherein he makes it painstakingly clear that he found the testimony of respondent and his current wife to be totally incredible, we affirm both orders in their entirety.

Respondent has been a litigant in contested child support proceedings before the same Family Court for the past decade, a history which is indeed relevant to the present dispute and thus briefly discussed. In addition to the instant proceeding involving his two sons with petitioner, respondent was the subject of a 1990 contested child support and filiation proceeding filed by the mother of his third child, a daughter born in January 1990. After several days of hearings and the receipt of

"voluminous exhibits" in that case, Family Court found that respondent had intentionally attempted to delay the proceedings, had intentionally attempted to frustrate the discovery process and had proffered a position which the court appropriately characterized as "preposterous." Specifically, respondent argued that he should not pay more than $25 *per month* for the support of his daughter (the minimum child support obligation for a parent whose income is below the Federal poverty line, an amount intended for the "poorest of parents" [*Matter of Beaudoin v Joseph K.*, 165 AD2d 359, 361]). Respondent proffered this argument notwithstanding the fact that in the preceding year (1991) he had made *$900,000* as a pitcher for the New York Yankees.

In properly rejecting this "preposterous" argument, Family Court specifically found that respondent had the ability to earn $40,000 annually. In reaching this conclusion, the court noted that this figure was *not* based upon any projected income as a professional athlete.[1] Rather, it was based upon respondent's "ability to earn an income in *any* field, related or unrelated to professional sports" (emphasis supplied). There is no indication in the record that respondent appealed from this determination, which was rendered in 1992.

The instant dispute began in 1994 when petitioner first sought court-ordered child support from respondent. After considerable discovery and hearings which spanned six months, the Hearing Examiner rendered a lengthy, detailed decision in 1996 fixing respondent's child support obligation for his two sons at $100 weekly, after making certain adjustments including a deduction for the child support he was then obligated to pay for his daughter. In this decision, the Hearing Examiner took great pains to summarize respondent's extensive professional baseball career and the significant sums he received during its 10-year span.[2] The Hearing Examiner also recognized respondent's 1995 employment as the general manager for a local minor league baseball team at an annual salary of $40,000. He then used this latter figure to calculate respondent's obligations under the Child Support Standards Act (*see,* Family Ct Act § 413); a figure which, not coincidentally, was the *exact* same figure employed by Family Court in 1992. Thus, respondent was ordered to pay $100 per week in child support. Significantly, no objections were filed to the Hearing Examiner's

---

1. By the time Family Court rendered its decision, respondent had lost his position in professional baseball.

2. Prior to joining the Yankees, respondent played for four other major league baseball teams at annual salaries ranging from $82,000 to $550,000.

1996 decision (see, Family Ct Act § 439 [e]; *Gray v Yorio*, 244 AD2d 184; *Matter of Ballard v Davis*, 229 AD2d 705, 706).

No sooner had this chapter of litigation concluded than respondent filed the subject petition seeking a downward modification of child support on the basis that his employment as general manager was to terminate at the end of 1996. Hearings on this petition (as well as a contempt petition filed by petitioner) consumed four days of testimony in September 1998 and December 1998 before the *same* Hearing Examiner who rendered the 1996 order. In substance, respondent testified at these hearings that he left his job as general manager not because he was fired, but because of a contract dispute with the owners who wanted to change his $40,000 annual salary to a $20,000 annual salary with bonuses. He further testified that he was essentially unemployed in 1997 when his efforts at establishing two nascent satellite dish enterprises failed. In 1998, he became employed as the manager of "Dave La Point's Pitchers," a sports bar wholly owned by his current wife who unilaterally set his salary at $24,000 per year.

The Hearing Examiner denied respondent's application for a downward modification of child support. Moreover, based upon evidence that respondent surrendered his daughter for adoption and thus was no longer legally obligated to pay child support for her, the Hearing Examiner further determined that respondent was not entitled to a deduction against his income pursuant to Family Court Act § 413 (1) (b) (5) (vii) (D). After also deleting a deduction for extraordinary visitation expenses and taking into consideration income that petitioner received from certain annuities, the Hearing Examiner ordered respondent to pay $175 per week in child support. The Hearing Examiner also found that respondent was in willful violation of the 1996 child support order and ordered him to pay $5,000 in counsel fees. Upon the filing of objections by respondent, these findings were ultimately affirmed by Family Court.

We find no merit in respondent's claim that the Hearing Examiner erred in not granting his request for a downward modification of child support and in modifying same to $175 per week. Of critical importance to our resolution of this issue is the fact that the Hearing Examiner, who had the opportunity to hear the testimony in this matter, to evaluate witness demeanor and to assess credibility, in no uncertain terms found respondent and his current wife to be patently incredible. For example, the Hearing Examiner found their testimony to be "a story literally of a 'house of cards,'" he found that they fabricated their "financial picture" primarily to insulate re-

spondent from paying petitioner child support and that their "joint credibility" had been contradicted and undermined. With respect to respondent himself, the Hearing Examiner characterized him as "generally non-credible and purposefully evasive," concluded that he had assumed "untenable" and "glaringly disingenuous" positions and specifically found that his "present and past financial condition and circumstances [were] self-created."[3] With respect to the issue of whether respondent has an ability to earn $40,000 per year, as twice previously determined in lengthy judicial proceedings, the Hearing Examiner found "[n]othing in the present case justifies a change in that finding of ability." He also drew upon his prior history with these parties in rendering his factual conclusions, which was entirely appropriate under the circumstances.[4]

Indeed, although respondent claimed that his earning capacity was only $24,000 (a salary then set by his current wife), there was considerable testimony at the hearings regarding respondent's comfortable lifestyle, including a nice home, new vehicle, country club membership, tens of thousands of dollars in annual credit card charges and golf vacations. Moreover, his wife testified that in the year in which respondent was essentially unemployed (and allegedly incapable of paying child support), *she* received $200,000 in "collusion" funds from the Major League Baseball Players Association as a result of a 1991 postnuptial agreement whereby respondent had divested himself of such assets and assigned them to her. It was anticipated that respondent's wife would receive a total of $575,000 in these "collusion" funds by the end of 1998 and additional future payments of at least $400,000, all of which, but for the assignment, would have gone to respondent. Yet, de-

---

**3.** The dissent is unpersuaded by the unequivocal findings of the Hearing Examiner concerning the issue of credibility vis-à-vis respondent's modification petition and his earning capacity. It agrees, however, that respondent failed to offer competent credible evidence of his inability to make the required child support payments such that he was properly found to have been in willful violation of the contempt petition. We find it difficult to reconcile these positions.

**4.** Appellate courts have long recognized that Family Court's intimate familiarity with the history of a particular case can aid in the resolution of issues (*see, e.g., Matter of Reese v Jones,* 279 AD2d 939; *Matter of Coutsoukis v Samora,* 265 AD2d 482). Indeed, this Court has previously found that a "trial court's long-standing familiarity with the interested parties provides an *additional* basis for our acceptance of its [factual] findings" (*Matter of Everett S.,* 62 AD2d 1069, 1070, *lv denied* 44 NY2d 647 [emphasis supplied]). So too, here, the Hearing Examiner's historical involvement with petitioner and respondent similarly provides a basis for his findings in this matter (*see, Matter of Laura LL. v Robert LL.,* 186 Misc 2d 642).

spite her receipt of such significant sums originally intended for respondent and despite their status as husband and wife, each disavowed that respondent was in any way the beneficiary of such sums. Under these circumstances, the Hearing Examiner most astutely rejected respondent's testimony that he was completely unaware of the finances of his current family unit as incredible and purposefully evasive.[5]

To this end, it is well settled that for purposes of determining the amount of a parent's child support obligation, a court has the discretion to impute income where the parent receives financial support from a relative (*see, Matter of Collins v Collins*, 241 AD2d 725, 727, *appeal dismissed and lv denied* 91 NY2d 829; *Matter of Ladd v Suffolk County Dept. of Social Servs.*, 199 AD2d 393, 394; *see also*, Family Ct Act § 413 [1] [b] [5] [iv] [D]) and/or where a parent has divested himself or herself of assets in order to reduce a child support obligation (*see*, Family Ct Act § 413 [1] [b] [5] [v]). Indeed, it has long been the law in this State that one cannot avoid his or her familial obligations by simply assigning away one's assets (*see, Hickland v Hickland*, 39 NY2d 1, 5, *cert denied* 429 US 941). The instant case is the quintessential fact pattern for the application of this rule.

More importantly, it need not be gainsaid that it was *respondent* who had the burden to establish a sufficient change in circumstances to warrant a downward modification of his child support (*see, Matter of Bouchard v Bouchard*, 263 AD2d 775, 777; *Matter of Hanehan v Hanehan*, 260 AD2d 685, 686). Any factual lapses in the record regarding, for example, respondent's educational background, as suggested by the dissent, thus must be attributed solely to respondent. Considering his extensive lifetime experiences, it is simply insufficient for respondent to merely prove that he lost his job (particularly where the record reveals that he actually quit) and that he contacted all major and minor league baseball organizations for new employment without success. Even attributing a modicum of credibility to respondent's testimony on the issue of his efforts to seek employment after 1996, we would find his showing woefully inadequate and affirm on that basis alone. As a final matter on the issue of his child support obligation,

---

5. In our view, remitting this case for further proceedings, as suggested by the dissent, would not only undermine this Court's usual tendency to defer to a Hearing Examiner's assessment of credibility, but would also reward litigants who adopt a strategy of delay, obfuscation, concealment and duplicity in Family Court proceedings, a strategy which this Court should not countenance.

respondent's contention that he is still entitled to a deduction for the child support of his daughter who has since been adopted by another man—because he had previously paid this obligation by obtaining a cash advance on a credit card and still owes on this card—can charitably be characterized as unpersuasive.

Respondent's remaining contentions do not warrant extended discussion. Having previously and fully litigated the impact that certain annuities had on his obligation to pay child support and having then failed to timely seek review of the resulting adverse order of the Hearing Examiner (*see*, Family Ct Act § 439 [e]), respondent cannot now relitigate that issue in this separate action. Nor do we find error in the finding that he willfully violated the 1996 order of child support or in the decision to award $5,000 in counsel fees. As to the former, respondent candidly acknowledged that he did not pay child support in accordance with the existing order, thus establishing prima facie evidence of a willful violation (*see*, Family Ct Act § 454 [3] [a]; *see also*, *Matter of Powers v Powers*, 86 NY2d 63, 69). As to the inability to pay, respondent's demonstrated noncredible and evasive testimony concerning his financial matters most certainly does not constitute competent credible evidence of same (*see*, *Matter of Powers v Powers*, *supra*, at 69-70).

Peters, J. P. and Spain, J., concur.

Mugglin, J. (concurring in part and dissenting in part). We respectfully dissent only from that portion of the majority which affirms the imputation of the ability of respondent to earn $40,000 per year. It is our view that as the party seeking modification, respondent met his initial burden of proving by clear and convincing evidence that there had been a change in circumstances (*see*, *Matter of Vitek v Vitek*, 170 AD2d 908) by demonstrating that his employment as the manager of a minor league baseball team at $40,000 per year had ended and he was currently employed earning $24,000 per year. It was not his obligation to prove an inability to pay. Further, it is our view that any reliance upon the June 23, 1992 order as support for his ability to earn $40,000 per year is unwarranted. After confessing "considerable difficulty in attempting to determine a reasonable yearly income where respondent's prospects as a professional athlete are so uncertain," Family Court imputed $40,000 in earning ability to respondent, "not based upon any projected income as a professional athlete; rather, it is based upon his present ability to earn income in any field * * * given respondent's considerable talent and experience." What that talent and experience consists of is unre-

vealed by the record. Moreover, little comfort can be taken from Family Court's recitation of respondent's assets, including a 1990 Porsche, a 1987 Ford pickup and real estate, both in New York and Florida, since these assets must have been acquired when he was earning substantial sums as a professional baseball player. Moreover, there is no showing in the current record that he still retains these assets. Consequently, the imputation to respondent in the current proceeding to earn $40,000 annually, whether coincidental or not, finds no support from the prior record.

While we do not condone what Family Court has described as respondent's lack of candor and evasive trial tactics, we do not believe that, for those reasons, we should depart from the settled rule in this Department which is that "a court need not rely upon a parent's own account of his or her finances in determining child support * * * and may * * * impute income 'based upon a prior employment experience * * * as well as such parent's future earning capacity in light of that party's educational background' " (*Matter of Collins v Collins*, 241 AD2d 725, 727, *appeal dismissed and lv denied* 91 NY2d 829, quoting *Matter of Susan M. v Louis N.*, 206 AD2d 612, 613 [citations omitted]; *see, Matter of Zevotek v Zevotek*, 257 AD2d 888, 889). The imputation of earning ability is painfully unreviewable on this record. Respondent's prior employment experience, as shown by the record, was only successful in organized baseball. The record is silent as to whether or not that experience can be utilized in any other capacity as a wage earner. In addition, the record is entirely silent concerning his educational background. Consequently, we would remit this issue to Family Court.

Lahtinen, J., concurs. Ordered that the orders are affirmed, without costs.