Matter of J.A.E. v A.B. (2005 NY Slip Op 25434)

Matter of J.A.E. v A.B.

2005 NY Slip Op 25434 [10 Misc 3d 446]

October 18, 2005

Nussbaum, J.

Family Court, Ulster County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Friday, March 3, 2006

[*1]
In the Matter of J.A.E., Petitioner,
v
A.B., Respondent.
Family Court, Ulster County, October 18, 2005

APPEARANCES OF COUNSEL

A.B., respondent pro se. Francis T. Murray, County Attorney (Lara M. Quintiliani of counsel), for petitioner.

OPINION OF THE COURT

Steven Nussbaum, J.
Respondent A.B. (objectant or respondent) has filed objections to an order of support on consent signed by the Support Magistrate on August 4, 2005, and entered on August 8. The order provides that objectant is to pay child support in the amount of $25 for the support of his daughter, A.E. (date of birth Dec. 15, 1997). It also provides that retroactive child support for the period of November 16, 2004 to August 4, 2005 is set at $500. The order was entered in connection with a Uniform Interstate Family Support Act paternity proceeding commenced by J.A.E. Mr. B. is currently incarcerated at Shawangunk [*2]Correctional Facility, serving the eighth year of a sentence of 28½ years to life. He was convicted of murder in the second degree based upon depraved indifference to life, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree.
By letter to this court dated November 26, 2004, Mr. B. requested that the necessary paternity tests be done before he was produced from prison. A genetic marker test was ordered, and the results indicated objectant is the biological father of the child within 99.99% of reasonable certainty.
On August 4, 2005, a hearing was scheduled. Present were counsel from the County Attorney's Office and Mr. B. Objectant, after being advised of his right to counsel, waived the same and admitted to paternity. With regard to setting an order of support, the Magistrate stated:
"Based on your circumstances, [Mr. B.], the law would have me enter what has been called a minimum order of support. It would say that you would have the obligation to pay $25 for the support of [A.] but that your debt can never accumulate to any larger than $500. The end result of all that is that you will owe $500 when you finally get out of the correctional institute that you're in. Do you understand all that? Do you have any questions about that? Do you have any objections to that?"
Mr. B. responded that he had no choice as he was in prison. The Support Magistrate then stated, "Unless there is an objection I will order all that." Objectant replied, "If you want me to pay $25 a month, I will pay $25 a month."
Mr. B. sets forth three objections to the order of the Support Magistrate. The first objection is that the order inaccurately states that he is unemployed and "possessed of sufficient means and able to earn such means to provide support to his child in the form of financial payments." He asserts that he is not employed in the traditional sense of the word, being barred by New York State from pursuing work release or seeking gainful employment because of his violent felony conviction. According to respondent, his lack of income is unavoidable.
His second objection is premised on the purported negative impact the $25 per month award of child support will have on his daughter, the mother, and himself. It is his belief that because he cannot pay the child support ordered, "his daughter and her mother . . . may become hurt and confused because it appears as if the father was found capable of paying the support and simply opted not to." The child will be led to believe he refuses to support her. Were the child support amount reduced to zero, according to objectant, the mother and child's "unrealistic expectations" would be eliminated.
According to respondent, he also will be negatively impacted by the order because were he labeled a "dead beat dad," he would be irreparably harmed and unfairly subjected "to bias and possible prejudice in any future criminal proceedings such as parole." Although he is in prison for at least another 20 years and will not be released until his daughter will be over the age of 21, he claims that the "dead beat dad" label would undermine his rehabilitation goals, preventing any possible tangible child support in the future.
His final objection is premised on the argument that since he will not be out of prison until his daughter is well past her majority, her need for support will have passed and the order is, [*3]therefore, merely punitive. Mr. B. argues that, since he is unable to pay, a support order serves no legitimate purpose.
Objectant requests that his order be reduced to no child support until such time as he is able to pay support. In the alternative, he seeks a stipulation from the court that any arrears of unpaid child support be capped at $500 pursuant to Family Court Act § 413 (1) (g). In the event that there are any future hearings or proceedings, he requests that he be provided counsel.
The County Attorney, in opposition to the objections, argues that the use of the term "unemployed" in the order is appropriate as it describes his uncontested working status and was important to recite in the order so as to justify the below poverty order being signed and entered. It is further argued that the objectant's claim that he would be labeled a "dead beat dad" is irrelevant to this court's determination. In addition, Mr. B. agreed to the order, and it should not be set aside. The County Attorney asserts that the inability of the objectant to make payments is the result of his own wrongdoing. Accordingly, it is argued, the objections should be denied.

Discussion

The issue essentially raised on objections in this matter is whether it is appropriate to establish an initial child support order for an individual already incarcerated and serving a sentence of 28½ years to life. All appeals by the father of his criminal conviction appear to have been decided and, in all likelihood, he will not be released from prison, if at all, until his child is well into her majority. Based upon the information provided, it appears that he committed the felony and was arrested shortly before the child's birth. Mr. B. had already served seven years of his sentence at the time the paternity proceeding in issue was commenced. Objectant does not contest his paternity, but rather his obligation to pay child support of $25 a month.
Most of the published case law in New York concerning the obligation of an incarcerated parent to pay child support arises in the context of the filing of a downward modification petition. In those instances, a support order was entered prior to the criminal sentence and incarceration of the payer, and that parent was seeking to change an existing support order or to justify a failure to pay previously court-ordered support. (Matter of Knights v Knights, 71 NY2d 865 [1988] [incarceration does not justify downward modification of child support]; Matter of Commissioner of Social Servs. v Darryl B., 306 AD2d 54 [1st Dept 2003]; Matter of Furman v Barnes, 293 AD2d 781 [3d Dept 2002] [support magistrate's summary dismissal of father's petition seeking downward modification of child support due to long-term incarceration upheld]; Matter of Ontario County Dept. of Social Servs. v Jackson, 212 AD2d 1056 [4th Dept 1995]; see also Matter of Grettler v Grettler, 12 AD3d 602 [2d Dept 2004] [loss of employment due to arrest was no excuse for failure to pay ordered child support].) The rationale is that a downward modification of child support is inappropriate since the noncustodial parent's incarceration and loss of employment was the result of his or her wrongful conduct.
An initial order of child support is being sought in this case, however, after the respondent has already been in prison for several years and will remain there for at least another 20 years, if not the remainder of his life. During the hearing before the Support Magistrate, Mr. B. indicated that he had no assets and no income. There was no evidence as to his preincarceration employment history or income. Given the seriousness of the crimes of which [*4]he was convicted, objectant currently is not eligible for work release.
In Matter of Winn v Baker (2 AD3d 1169 [3d Dept 2003]), the petitioner was granted an order of child support against a respondent who was incarcerated at the time of the support hearing. He was convicted of felony driving while intoxicated. The ordered payment of $82 weekly was based upon income imputed to the respondent based upon his salary or income prior to his arrest. In affirming the payment, the Appellate Division definitely stated that "New York courts will not countenance a reduced child support award where a parent's financial hardship results from his or her own intentional and wrongful conduct resulting in incarceration." (Id. at 1170, citing Matter of Knights v Knights, 71 NY2d 865 [1988], supra.)
In the within case, however, the respondent had been incarcerated for over seven years at the time the proceeding was commenced. On the other hand, in Winn, the noncustodial parent's incarceration appears to have been a recent event, a conclusion based upon employment earning records from the prior year being introduced into evidence. As noted by one New York court, while there is discretion to impute income to a parent, including imputing income based upon a party's prior employment history, "the exercise of that discretion 'must have some basis in law and fact.' " (Matter of Cattaraugus County Commr. of Social Servs. v Bund, 259 AD2d 973, 974 [4th Dept 1999].) The Supreme Court of Nebraska, in State v Porter (259 Neb 366, 374, 610 NW2d 23, 29 [2000]), found that before relying on earning capacity to set an initial child support order for an incarcerated parent, evidence should be presented showing that the incarcerated parent was capable of realizing such capacity through reasonable effort. The court held, therefore, that in the absence of prison wages, nonwage income or assets, the minimum amount of child support should be awarded. (Id.) The record of this proceeding before the Support Magistrate provides no indication as to the objectant's preincarceration income or as to his educational or occupational background. With no recent income history, the Support Magistrate set a support order of $25 a month in accordance with the provisions of Family Court Act § 413 (1) (g) and no objection was raised by the County Attorney or Mr. B. at that time.
With regard to objectant's claim that he is entitled to a support order of zero dollars, this court finds no reason to treat this father any differently than a noncustodial parent who has a higher income imputed after he or she, voluntarily and without need, resigns from jobs, changes occupations or moves to a new relocation but then is unable to find employment paying the same wages. (See, e.g., Matter of Doscher v Doscher, 54 NY2d 655 [1981], affg 80 AD2d 945 [3d Dept 1981] [income imputed after voluntary change of occupation resulting in lesser income]; Matter of Brefka v Dobies, 271 AD2d 876 [3d Dept 2000], lv denied 95 NY2d 759 [2000] [voluntary resignation from job does not entitle parent to downward modification of temporary support order]; Matter of Susan M. v Louis N., 206 AD2d 612 [3d Dept 1994] [mother's avoidance of employment commensurate with her ability appropriately considered in establishing child support obligation]; Matter of Bouchard v Bouchard, 263 AD2d 775 [3d Dept 1999] [relocation by choice to another county and inability to find employment in same field at same salary resulted in imputation of income based upon earlier higher salary]; see also Matter of Crosby v Hickey, 289 AD2d 1013 [4th Dept 2001] [mother who voluntarily left last [*5]employment not entitled to reduction in child support]; Matter of Gaudio v Gaudio, 280 AD2d 600, 600 [2d Dept 2001] [father's loss of employment due to his "own substantial misconduct" does not constitute grounds for downward modification]; Matter of Johnson v Junjulas, 215 AD2d 559 [2d Dept 1995] [father's financial hardships arising from loss of driver's license due to own wrongful conduct insufficient justification for lower child support obligation].) Mr. B.'s incarceration certainly was a foreseeable result of committing a felony. To grant him a child support order requiring him to pay zero dollars a month would have the effect of rewarding him for his very serious criminal activities, an unjust result under the circumstances of this case.
Although it has been held in Matter of Kirchner v E.H. (194 Misc 2d 515 [Fam Ct, Orange County 2003]) that the support magistrate might issue an order containing a support obligation of zero dollars when a parent is incarcerated pursuant to Matter of Rose v Moody (83 NY2d 65 [1993]), this court is of the opinion that under the circumstances of this case it would be contrary to the strong public policy of this state. (See Winn v Baker, supra, 2 AD3d at 1170.) Mr. B. should be mandated to reimburse the mother if and when he is released from prison for at least a very small portion of the sums that have been and will be expended for their daughter's support. In the event that he is able to participate in work release programs, receives an inheritance, or for some other reason obtains any assets or income while in prison, these resources should be available to support his child. At the hearing objectant raised no issue and presented no evidence that demonstrated that he, but for his incarceration for second degree murder, could not work because of a disability not the result of his own wrongful conduct. Further, because the respondent raised no objections to the amount of the support order when he appeared before the Support Magistrate, despite being given ample opportunity to do so, he is bound by the agreed-upon amount. (Matter of Steuben County Support Collection Unit v Bartholomew, 2 AD3d 1434 [4th Dept 2003]; Matter of Oropallo v Tecler, 263 AD2d 716 [3d Dept 1999]; see also Matter of Proulx v Ardito, 289 AD2d 581 [2d Dept 2001] [order on consent is not subject to review by objections unless it contains a provision not agreed upon].)
The father's argument that the order should not provide that he is unemployed and that he has the ability to be employed is without merit. As noted above, Mr. B. is unemployed due solely to his own actions. His incarceration is the foreseeable result of committing a murder and felony. Had Mr. B. not committed a crime, his employment options would not have been limited. He has the physical ability to work but cannot do so now because of his illegal conduct. The provisions of the order indicating he is unemployed and capable of working are, therefore, appropriate. He still has an obligation to provide financial support for his child. (See, e.g., Szigyarto v Szigyarto, 64 NY2d 275 [1985]; Matter of Phelps v La Point, 284 AD2d 605 [3d Dept 2001].)
The court does find that there was an error in the order as written. Pursuant to Family Court Act § 413 (1) (g), "[w]here the non-custodial parent's income is less than or equal to the poverty income guidelines amount for a single person as reported by the federal department of health and human services, unpaid child support arrears in excess of five hundred dollars shall not accrue." There is, in New York, case law holding that it is inappropriate to apply this accrual cap when a parent's financial hardship is the result of his or her incarceration. (Matter of Onondaga County Dept. of Social Servs. [*6]v Timothy S., 294 AD2d 27 [4th Dept 2002].) As noted by one court,
"[a] literal application of the support arrears cap provision contained in section 413 (1) (g) of the Family Court Act would result in a cap on child support arrears at $500 whenever a respondent's income fell below the poverty level—for whatever reason. The irrationality of this approach is that it lumps together those parents who have a just reason for their low earnings with those who do not. Such indiscriminate application of the support cap offends a sense of fundamental fairness and is contrary to the overall intent of the statute and legislative intent" (Matter of Sutkowy v J.B., 196 Misc 2d 1005, 1008 [Fam Ct, Onondaga County 2003]).
After holding that "the support arrears cap provision must be applied with regard to the facts and circumstances of the individual case" (id.), the Family Court found that because the father's financial hardship was due to his own actions in failing "to conduct a meaningful search for employment or to participate in training or educational opportunities to make himself more employable" (196 Misc 2d at 1009), the accrual cap should not be applied. Because the parties to this matter consented to the imposition of the cap on the accrual of arrears, however, it will not be disturbed.
The order incorrectly provides that retroactive child support for the period of November 16, 2004 to August 4, 2005 is set at $500. With a support order of $25 a month, that calculation clearly is in error. Additionally, the order fails to recite that so long as Mr. B. is incarcerated and his income is less than the poverty income guideline amounts for a single person as reported by the federal Department of Health and Human Services, the accrual of arrears on his child support obligation is capped at $500. Since the Support Magistrate, on the record, indicated that the order would provide such a cap during the objectant's period of incarceration, and as no objection was raised by either party, this provision should be included in the order on consent.
With respect to the other contentions set forth in the objections, there is no basis to sustain them. As noted previously, objectant agreed to the support order despite being given several opportunities to object by the Support Magistrate. He, unlike the father in Matter of Kirchner v E.H. (194 Misc 2d 515 [2003]), was given the opportunity to appear before the court and be heard. Further, objections are the equivalent of an appellate review, and this court is not to consider matters which were not brought before the Support Magistrate or preserved by proper objection. (Matter of Redmond v Easy, 18 AD3d 283 [1st Dept 2005]; Matter of Green v Wron, 151 Misc 2d 9 [Fam Ct, NY County 1991]; see also Gaudette v Gaudette, 234 AD2d 619 [3d Dept 1996], appeal dismissed 89 NY2d 1023 [1997] [matters not preserved for review by proper objection are inappropriate for appellate review].)
The court will note, however, that it does not accept the objectant's argument that the award of child support should be set aside because of the unrealized expectations and emotional distress it will cause the mother and child. Any possible issues the child may have concerning her father's failure to pay support will with all certainty not be because he did not abide by an order to pay support in the amount of $25 a month. Rather, if there are any emotional consequences she suffers as a result of her father's actions, it is more likely to arise from the fact that he is serving a very long and potentially lifetime prison sentence because of his conviction [*7]of murder.
The argument that the order requiring the objectant to pay child support is punitive also is unpersuasive. It is the strong public policy of this state that minor children are to receive adequate financial support from their parents. (Matter of Vicki B. v David H., 57 NY2d 427, 430 [1982]; Schaschlo v Taishoff, 2 NY2d 408 [1957]; Priolo v Priolo, 211 AD2d 627 [2d Dept 1995], lv denied 86 NY2d 705 [1995].) This is to ensure that children have the financial resources available to provide for their necessities, not to punish parents. A.'s needs are not any less because her father is incarcerated. The mother requires assistance to ensure that the child's needs are met. If Mr. B. is unable to pay the child support now because he is incarcerated, he should pay the arrearages when released from prison, even if his child is over 21 years old. It is not punitive to require Mr. B. to meet this important obligation if he is ever in the position to do so. The award of child support is not a fine or financial penalty imposed because he committed a crime. Rather, the $25 a month he has been ordered to pay is to fulfill his obligation to support his daughter. The court must balance the rights of parents convicted of crimes against those of a child who requires support despite the circumstances of her father. Clearly, the welfare and best interests of the parties' daughter take precedence, and the objectant is obligated to pay child support. Moreover, it is unlikely that the respondent's failure to pay child support while incarcerated will affect any future prospect of parole since the inability to pay child support because of incarceration is a defense to a willful finding in child support enforcement proceedings. (See Matter of Alvarado v Dungee, 128 AD2d 519 [2d Dept 1987].)
In light of the above, it is unnecessary for there to be any further hearing with regards to this matter or to appoint counsel for Mr. B. This matter is remanded to the Support Magistrate solely for the purpose of correcting the order of support in accordance with this decision and order.