OPINION OF THE COURT
Paula J. Hepner, J.
Before the court is an order to show cause filed on February 18, 2009 by the movant Dr. Louis Lauro asking
“to stay all proceedings in this matter, including the custody hearing, pursuant to CPLR 2201, pending the outcome and determination of the within application, relieving Dr. Louis Lauro as the court-appointed, independent, neutral forensic evaluator in this matter and precluding his testimony at any further proceedings in this matter; and for such other and further relief as to the court may seem just and proper.”[1]
An affidavit of service attesting that Natalie Ragoo served the motion upon the petitioner by overnight mail on February 19, 2009 was stamped as received by the court on February 24, 2009. Although Dr. Lauro’s original motion and his reply papers were served to 611 Naomi Street instead of 611 West Naomi Street, the petitioner acknowledged receipt of the papers on February 20, 2009. The matter was scheduled for oral argument on February 23, 2009 and was adjourned at the request of the petitioner to March 4, 2009 so that he could appear and participate in the argument on the motion.[2]
*686 At oral argument, Dr. Lauro’s attorney maintained that he is unable to continue on the case because he has a conflict of interest resulting from the petitioner having sued him in federal court. As a consequence of being sued, Dr. Lauro believes he has been placed “in the precarious position of having to render an objective professional opinion in this action, while simultaneously defending himself from [the Petitioner’s] allegations against him in a different action.” Dr. Lauro relies upon American Psychological Association Ethical Principles of Psychologists and Code of Conduct § 3.06 which provides that psychologists must “refrain from taking on a professional role when personal, scientific, professional, legal, financial, or other interests or relationships could reasonably be expected to . . . impair their objectivity, competence, or effectiveness in performing their functions.” Claiming that he is in a “multiple relationship” with the petitioner because he is “in a professional role with [him] and at the same time in another role with the same person,” he is unable to continue to serve as the forensic evaluator and defend himself in the federal lawsuit. Ultimately, Dr. Lauro wishes to be relieved from the case and discharged from any duty to submit his forensic report and testify at the custody trial. Dr. Lauro cites no case law to support his position but does point to the fact that this court has twice exercised its discretion to relieve two previously appointed forensic evaluators.* *[3]
The petitioner filed two sets of papers but neither addresses the merits of the motion nor do they offer any case law relevant to the issues to be decided. Instead, he focuses on the lack of timely notice and his need for an adjournment. At oral argument the petitioner concurred with Dr. Lauro’s motion to be relieved referencing the principles of the American Psychological Association and arguing they prohibit Dr. Lauro from continuing in this litigation. According to the petitioner, Dr. *687 Lauro cannot wear two hats or be objective, and his opinion will be tainted because of the lawsuit he filed against him. The petitioner intimated that Dr. Lauro must be relieved of his duties in this case “or his license will be suspended.” When asked by the court if he intended to file a complaint against Dr. Lauro, the petitioner replied, “I have to consult with my attorneys but that is a possibility for sure.” Additionally, the petitioner argued that if Dr. Lauro testifies in this proceeding about the respondent, he will be improperly bolstering the testimony of the respondent, who is a codefendant in the federal lawsuit.
At oral argument the respondent opposed Dr. Lauro’s motion to be relieved. Although the court’s order directed an assessment of both parties, when the petitioner repeatedly failed to participate, the order was modified on July 3, 2008 and Dr. Lauro was instructed to proceed without him and prepare a parenting assessment of the mother. The respondent urges the court to find there is no reason to delay this case, which has been pending for more than a year, because she has paid her share of the cost of the evaluation and she, her husband and two children have cooperated.
At oral argument, the attorney for the child also opposed Dr. Lauro’s motion to be relieved. She maintained that because Dr. Lauro has only been asked to prepare a parenting assessment of the mother, his testimony will never extend to the point of asserting an opinion about the father. Consequently, Dr. Lauro will not be testifying to any facts or opinions pertaining to the petitioner and there is no ethical conflict barring Dr. Lauro from submitting his report. Further, the child’s attorney argues that if Dr. Lauro is relieved, substantial delay will occur in seeking to find a fourth expert and, in all likelihood, given the litigiousness of the petitioner, no other forensic evaluator would agree to take the case. Under these circumstances, control of the litigation will regress to the petitioner which, counsel maintains, is the result intended by his conduct.
Elena Ali McK. was born in November 1997. The custody litigation over who will parent this child began in 2000 in Pennsylvania after the parties separated[4] and continues to this *688 day.[5] During the pendency of the Pennsylvania and New York cases, the petitioner has filed lawsuits in the United States District Court for the Eastern District of Pennsylvania,[6] for the Southern[7] and Eastern[8] Districts of New York and has filed a series of repetitive allegations in various court papers filed in the instant proceeding, including one for recusal of the undersigned, all of which charge each of the Caucasian defendants with discrimination and conspiracy to systematically deprive this African-American petitioner of his civil and constitutional rights. On this record, it is evident that the petitioner’s modus operandi is to thwart a full presentation of the evidence by ensnaring anyone who becomes involved with the respondent or the child in a web of litigation and paralyzing them from participating in the case.
Two important principles dictate the result reached by the court on this motion, the first being that the petitioner cannot be permitted to impair or impede the progress of this custody *689 proceeding by holding hostage the parties and the witnesses. “The right of access to the courts ... is neither absolute nor unconditional . . . [and] the right to appear pro se is not unlimited” (Spremo v Babchik, 155 Misc 2d 796, 802 [Sup Ct, Queens County 1992], affd 216 AD2d 382 [2d Dept 1995], lv denied 86 NY2d 709 [1995], cert denied 516 US 1161 [1996]). While “public policy mandates free access to the courts . . . a litigious plaintiff pressing a frivolous claim can be extremely costly to the defendant and can waste an inordinate amount of court time, time that . . . the trial courts can ill afford to lose” (Sassower v Signorelli, 99 AD2d 358, 359-360 [2d Dept 1984]).
The undersigned could not find any reported decisions concerning a forensic expert who sought to be relieved after being sued by one of the litigants. There is an analogy to be drawn, however, to the line of cases where a litigant seeks recusal of a judge and then sues the judge when the decision is unfavorable to him or her.[9] In these instances, courts have held that “[a] litigant cannot be allowed to create a sham controversy by suing a Judge without justification, and to then use that sham as a means for achieving a judge’s recusal. To hold otherwise would be to give [the] litigant a license under which the judge would serve at their will” (Spremo v Babchik, 155 Misc 2d at 799-800 [internal quotation marks omitted]). This is what has happened in the case of Dr. Lauro.
The second and most important principle is that the child is entitled to finality. Dr. Lauro has reviewed court records and school records, has made a home visit, has conducted office interviews with the respondent, her husband and her two children, and has administered psychological testing to her and the subject child. Upon receipt of his report, the trial can begin.[10] Relieving Dr. Lauro, when his assessment is done, and subjecting the child and her family to a second evaluation would be emotionally stressful, psychologically harmful and disruptive to the child’s sense of security and well-being. If this scenario were to be repeated at the end of the second assessment which, given this petitioner’s history, is more probable than not, relieving Dr. Lauro will have been an exercise in futility. This court believes *690 it would be an abuse of discretion to require the child and her family to undergo a second evaluation when the alleged deficiency in Dr. Lauro’s assessment is the result of the petitioner’s own conduct (Rosenblitt v Rosenblitt, 107 AD2d 292, 294 [2d Dept 1985]).
In Meirowitz v Meirowitz (96 AD2d 1030, 1030 [2d Dept 1983]), the Second Department reiterated the standard to be applied by the courts in making an initial custody determination when it held that “the paramount concern in all custody matters is the best interests of the child” (Eschbach v Eschbach, 56 NY2d 167 [1982]; Miller v Pipia, 297 AD2d 362 [2d Dept 2002]). The case law is replete with decisions espousing the principle that delay is not in the best interests of the child (Matter of Emily I., 50 AD3d 1181 [3d Dept 2008] and Matter of Beverly SS., 132 AD2d 825, 827 [3d Dept 1987] ;[11] Matter of Aisha T, 55 AD3d 435 [1st Dept 2008] and Matter of Jazminn O’Dell P., 39 AD3d 235 [1st Dept 2007];[12] Matter of Joyce T, 65 NY2d 39 [1985]).[13] The professional literature is in accord with this principle as well (Matter of Laura LL. v Robert LL., 186 Misc 2d 642 [Fam Ct, Albany County 2000]).[14] In light of the petitioner’s predilection for litigating every detail of this case, ostensibly to preserve and protect his relationship with his daughter, it is evident that this litigious posture has only distanced him from his daughter for nine *691 precious years of her life. What this child is learning from all of this litigation is that every relationship she has and every life she touches will turn to stone, not gold. By the time the multitude of complaints, motions, counterclaims, appeals and collateral attacks are eventually decided,[15] the child’s entire minority may be consumed and the possibility of the petitioner and his daughter having any relationship destroyed. It is unconscionable for the court to permit this to happen and certainly not in the child’s best interests.
Turning to whether a conflict of interest exists that would prevent Dr. Lauro from remaining on this case, the court concludes there is none. Conflicts of interest between parties and witnesses arise when “confidential or privileged matter [is] disclosed by the moving party to the expert” (Friedrich v Blasz, 11 Misc 3d 1068[A], 2006 NY Slip Op 50432[U], *3 [Sup Ct, Erie County 2006]).[16] Having been hired as the court’s expert, Dr. Lauro is not in privity with either of these parties. Having never spoken to the petitioner, Dr. Lauro is not in receipt of any confidential or privileged information from him. Even if the petitioner had participated in the sessions with Dr. Lauro, the very nature of a forensic evaluation lacks any guarantees of confidentiality. “The public policy upon which the privilege of confidentiality is based yields to the need for relevant information by the Court charged with the duty as parens patriae of providing for the best interests of infants who are the subjects of a contested custody litigation” (Coderre v Coderre, 1990 WL 312774, *2 [Sup Ct, Suffolk County 1990]). A conflict of interest can also arise when a witness has a “personal interest in the event” or its outcome (Zinn v Jefferson Towers, Inc., 14 AD3d 398 [1st Dept 2005])[17] or has “competing loyalties” (Gilly v City of *692 New York, 69 NY2d 509, 512 [1987]).[18] This is the premise underlying Dr. Lauro’s motion. Case law, however, does not hold that interested persons are automatically disqualified from appearing in a case (McDermott v Manhattan Eye, Ear & Throat Hosp., 15 NY2d 20 [1964]).[19] When this occurs, cross-examination can ferret out “any possibility of bias” (Kaye v Kaye, 11 AD3d 392, 394 [1st Dept 2004]) and the trier of fact will evaluate the weight to be given to the testimony proffered in light of the individual’s “disposition to the truth.”
Dr. Lauro’s continued participation in the case will not place him in violation of the rules of professional conduct for the American Psychological Association. Since Dr. Lauro has never seen, interviewed or assessed the petitioner, he is not “in a professional role” with him.[20] Since Dr. Lauro has not done any work with the petitioner, he is not in a position to testify about him. Dr. Lauro will only be testifying about his assessment of the respondent, and the fact that he is a defendant in a lawsuit filed by the petitioner will not affect his “objectivity, competence or effectiveness” in regard to him.[21] The petitioner’s “conclusory beliefs” are “insufficient grounds to disqualify the expert” appointed by the court (Schairer v Schairer, 192 Misc 2d 155, 159 [Sup Ct, Nassau County 2002]).
Accordingly, it is ordered that the motion of Dr. Lauro to be relieved as the court-appointed forensic expert is denied; and it is further ordered that Dr. Lauro is to submit his parenting assessment of the respondent to the court on or before April 27, 2009 so that this case can proceed to trial; and it is further ordered that the respondent’s cross motion for sole custody (motion No. 2 on supplemental A) is adjourned for trial; and it is further ordered that the motion by the attorney for the child to preclude the petitioner from challenging Dr. Lauro’s assessment, opinions, testimony, recommendations or the admissibility of his report on the grounds that it is incomplete, one- *693 dimensional and represents only the uncontradicted views of the mother and child is granted; and it is further ordered that any issues not addressed or disposed of in this decision and order are deemed to be denied.

. On June 5, 2008 this court issued an order appointing Louis Lauro, Ph.D. to conduct a comprehensive child custody evaluation, mental health investigation and parenting assessment of the parties in this case to assist the court in determining the best interests of the child in the pending custody and visitation petitions.

. On February 23, 2009 the petitioner did not appear but counsel for the respondent, the child and Dr. Lauro were present in court, prepared to argue the motion. On February 24, 2009 the petitioner filed a “Reply to Petitioner’s Opposition to Motion to Continue” in which he claimed lack of timely notice of Dr. Lauro’s “Rule to Show Cause” and claimed that he was unable to appear on February 23, 2009 due to “long standing medical appointments and professional obligations” scheduled for that day. He requested an adjournment in order to be heard on the motion. The matter was adjourned to March 4, *686 2009 and everyone was permitted to appear electronically to avoid travel time and costs.

. On February 15, 2008 the court initially appointed Mary Carlin, Ph.D. to conduct a full custody, mental health and parenting assessment of the parties. At the request of Dr. Carlin, made after the petitioner informed her that he would not pay his share of the assessment’s cost, she was relieved. Enrique Guiar, Ph.D. was the second expert to be appointed on May 15, 2008. Having learned that the father has “essentially sued everyone involved in the legal process,” Dr. Guiar informed the court by letter dated May 26, 2008 that he “did not feel comfortable taking this case as it represents a high risk for [his] small private practice as a solo practitioner.” Dr. Louis Lauro, Ph.D. was appointed thereafter as the third forensic expert.

. When the parties separated, the respondent took the child and filed for emergency custody in the Court of Common Pleas in Philadelphia, Pennsylvania. She obtained a temporary order of physical and legal custody on January 19, 2000. On February 4, 2000 the parties entered into an interim “custody, *688 partial custody and visitation agreement” whereby the mother obtained temporary custody and the father was to have supervised visitation and daily telephone contact with the child. The Pennsylvania Court of Common Pleas maintained jurisdiction over the parties until October 1, 2007 when it “relinquished [its] jurisdiction.”

. The instant proceeding for custody was filed by the petitioner on August 31, 2007.

. The petitioner filed a complaint in the United States District Court for the Eastern District of Pennsylvania (docket No. 03-CV-0952, 2003) naming as defendants the respondent and her counsel, the director of operations and case processing for the Court of Common Pleas, the Court of Common Pleas itself, the child’s day care center and its director and “other unknown persons.”

. By November 2007 the petitioner had filed a “Demand to Preserve Physical Evidence and Electronically Stored Data and Metadata” in the United States District Court for the Southern District of New York naming as defendants the respondent, her counsel and his law firm, respondent’s employer, four members of the respondent’s extended family, and a detective from the 7th precinct in the New York City Police Department.

. Under docket No. 08-CV-3896, the petitioner commenced an action in the United States District Court for the Eastern District of New York seeking “redress in the form of class action certifications, injunctive, declaratory, damages and punitive damages for numerous violations of his and the proposed classes’ constitutionally guaranteed rights and other federal and state laws that guarantee due process and equal protection of the law.” The complaint has been amended numerous times to add defendants and new causes of action. Dr. Lauro became a defendant in this lawsuit along with the respondent and her two attorneys and their law firm, the Kings County Family Court, the undersigned, the Clerk of the Court, “John Doe,” the Court Crier, the State of New York, two of the attorneys for the child and their law firm, the social worker assigned by the court to supervise visitation, three members of the respondent’s extended family, and “other unknown persons.”

. This court issued its decision on June 27, 2008 denying the petitioner’s motion for recusal and shortly thereafter, the undersigned became a defendant in the federal lawsuit he filed on September 23, 2008.

. What distinguishes the circumstances of Dr. Lauro’s application to be relieved from those of his predecessors is that neither of them did any work on the case before their appointments were terminated.

. The appellate court found that the Family Court did not abuse its discretion in concluding that further delay of the abuse proceeding pending the outcome of the criminal case against the parents would not be in the child’s best interest.

. The appellate court found that the Family Court appropriately declined to enter a suspended judgment in lieu of terminating respondent’s parental rights, as suspending judgment was not in the child’s best interests.

. The Court of Appeals held that where parental rights are terminated because of the parents’ present and future inability to care for the child, “further delay and indecision” arising from the holding of a separate dispositional hearing once mental retardation has been proved “does not serve the child’s best interests.” (65 NY2d at 49.)

. In this case Judge Duggan wrote,
“Every Family Court Judge in this (and every other) State knows from experience that protracted custody litigation is poisonous to children’s emotional (and often physical) health. Social scientists have empirically verified this experience and the court has specific evidence in the record in this case to support such a conclusion with respect to the LL. children. A Family Court Judge occupies a unique position to view a family’s emotional health. Under our one family-one Judge system, the assigned Judge virtually lives through the often protracted and always painful family conflicts that face the children.” (186 Misc 2d at 644-645.)

. Since this case began, the petitioner has already appealed three orders issued by the undersigned (February 14, 2008 directing supervised visitation, February 15, 2008 directing a forensic evaluation in this case, and March 17, 2008 directing supervised visitation at the New York Society for the Prevention of Cruelty to Children). The Appellate Division dismissed each of these appeals as the orders were not appealable as of right and leave to appeal had not been granted.

. The Supreme Court held that a confidential relationship existed between counsel and the expert to whom counsel disclosed confidential information which compromised the fairness of the proceeding.

. The Appellate Division found that the Supreme Court improperly dis-' qualified plaintiff from testifying as an expert on his own behalf.

. The Court of Appeals held that the trial and appellate courts erred in precluding the testimony of the plaintiffs witness, a physician who was hired by the defendant to examine the plaintiff.

. The Court of Appeals reversed the two lower courts and held there is no “unfairness ... by the practice of compelling a doctor, who is actually a defendant in the malpractice action, to testify as an expert” for the plaintiff (15 NY2d at 29).

. Ethical Principles of Psychologists and Code of Conduct, part 3, Human Relations, § 3.05 (a) (Multiple Relationships).

. Ethical Principles of Psychologists and Code of Conduct, part 3, Human Relations, § 3.05 (a) (Multiple Relationships).