IN RE INTEREST OF TAMIKA S. ET AL., CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. DEBRA S., APPELLANT.
529 N.W.2d 147

Filed April 4, 1995.    No. A-94-634.

Sandra Stern-Adams, of Legal Aid Society, Inc., for appellant.

Marti English, of Child Support Services of Nebraska, for appellee.

HANNON, IRWIN, and MUES, Judges.

IRWIN, Judge.

Debra S. appeals from an order of the separate juvenile court of Douglas County requiring her to pay $144 per month in child support for her six children, all of whom were in the custody of the Nebraska Department of Social Services (DSS). Appellant claims that the juvenile court erred in calculating her monthly income and that the support order reduced her monthly net income below the subsistence level set forth in the Nebraska Child Support Guidelines. For the reasons set forth below, we affirm.

## FACTUAL BACKGROUND

Evidence gathered from the record establishes the following: Appellant is the natural mother of six children, Tamika S., Herbert S., Brandon S., Chris S., Deandre S., and Rosavelt S. Appellant does not know where the fathers of her children are located. In February 1992, the Douglas County Attorney filed an amended petition in the juvenile court alleging that appellant's six children lacked proper parental care due to the faults or habits of appellant. See Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993). Specifically, the petition alleged that appellant left her children alone and unsupervised and that the family residence was found in a filthy and unsafe condition on January 25, 1992. The petition also alleged that appellant's boyfriend used inappropriate physical discipline on the children and that appellant did nothing to protect her children from such discipline.

On April 15, 1992, the court found appellant's six children to fall within the meaning of § 43-247(3)(a) and placed them in the temporary custody of DSS. Appellant was thereafter placed on a plan of reunification. Pursuant to the reunification plan, the court ordered appellant to obtain and maintain legal employment and to provide proof of her employment to DSS.

In May 1992 and in March 1993, Child Support Services of Nebraska requested financial information from appellant, but she failed to respond to either request. Pursuant to Neb. Rev. Stat. § 43-512.03 (Reissue 1993), Child Support Services filed a motion on May 24, 1994, requesting that appellant be ordered to pay a reasonable amount of child support.

A hearing on the motion was held May 31, 1994. At the hearing, appellant testified that she had worked "[o]ff and on" over the past $2^1/_2$ years. When the judge asked appellant why she had not read papers sent to her by DSS, she testified that she did not have time to do so, because she worked "[e]ight, pretty well to nine and ten" hours per day. However, later in the hearing, when the issue was how much appellant could pay for child support, she testified that she worked only 30 hours per week earning $4.50 per hour and that her average net earnings totaled $213 biweekly. Appellant's caseworker testified that she did not attend work on a regular basis. Appellant stated that she could work more than 30 hours per week. Appellant also receives free public housing and food stamps, and she testified that she spent her income on food, clothes, and personal things.

The State argued at the hearing that appellant's support should be set at $144 per month. Child Support Services' attorney stated that she arrived at this figure by calculating appellant's gross income at $737 per month, or appellant's alleged earning capacity working full time at minimum wage.

Evidence adduced at the hearing also showed that as of the hearing date, the State had spent over $37,000 for the support of appellant's children. In its order, the court found that appellant had the ability to pay $144 per month for child support, and ordered appellant to pay such amount, with no retroactive payments. See *State on behalf of Matchett v. Dunkle*, 244 Neb. 639, 508 N.W.2d 580 (1993). Appellant has timely appealed from this order.

## ASSIGNMENTS OF ERROR

Appellant claims that the trial court erred in disregarding appellant's actual earnings in its calculation of her child support obligation and in ordering appellant to pay child support in an amount that reduced her monthly net income below the subsistence level of $500 per month.

## STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and the appellate court is required to reach conclusions independent of the trial court's findings. However, where the evidence is in conflict, the appellate court will consider and may give weight

to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *In re Interest of J.T.B. and H.J.T.*, 245 Neb. 624, 514 N.W.2d 635 (1994); *In re Interest of J.A.*, 244 Neb. 919, 510 N.W.2d 68 (1994).

■ The determination of the amount of child support is initially entrusted to the discretion of the trial court, and although on appeal the issue is tried de novo on the record, in the absence of an abuse of discretion, the trial court's award of child support will be affirmed. *Shiers v. Shiers*, 240 Neb. 856, 485 N.W.2d 574 (1992).

## DISCUSSION

Neb. Rev. Stat. § 43-290 (Reissue 1993) provides that a juvenile court

> may order and decree that the parent shall pay, in such manner as the court may direct, a reasonable sum that will cover in whole or part the support, study, and treatment of the juvenile, which amount ordered paid shall be the extent of the liability of the parent. The court in making such order shall give due regard to the cost of study, treatment, and maintenance of the juvenile, the *ability of the parent to pay*, and the availability of money for the support of the juvenile from previous judicial decrees, social security benefits, veterans benefits, or other sources.

(Emphasis supplied.)

■ In their arguments, both parties in this case refer to the child support guidelines promulgated by the Nebraska Supreme Court. The authority for such guidelines is found in Neb. Rev. Stat. § 42-364.16 (Reissue 1993):

> The Supreme Court shall provide by court rule, as a rebuttable presumption, guidelines for the establishment of *all* child support obligations. Child support shall be established in accordance with such guidelines unless the court finds that one or both parties have produced sufficient evidence to rebut the presumption that the application of the guidelines will result in a fair and equitable child support order.

(Emphasis supplied.) We recognize that this statute is found in

chapter 42, article 3, of the Nebraska Revised Statutes, which is entitled "Divorce and Alimony," but that the case presently before us is a juvenile case. However, § 42-364.16 states that the guidelines are to apply to *all* child support obligations, and we have not been presented with, nor can we think of, any good reason not to apply the child support guidelines in juvenile cases where child support is ordered. Further, paragraph C of the Nebraska Child Support Guidelines provides in part, *"All* orders for child support obligations shall be established in accordance with the provisions of the guidelines . . . ." (Emphasis supplied.) The Nebraska Supreme Court has recognized that the use of the guidelines is not limited to divorce cases. See *State on behalf of S.M. v. Oglesby*, 244 Neb. 880, 510 N.W.2d 53 (1994). We therefore find that such guidelines apply in juvenile cases where child support is ordered.

■ Appellant claims that the juvenile court erroneously calculated her support obligation by using an "imputed income" instead of appellant's actual income. Brief for appellant at 7. We disagree. There is statutory and judicial authority for considering a parent's net earning capacity rather than his or her actual net income in determining child support. See, Neb. Rev. Stat. § 42-364(6) (Reissue 1993); *Shiers, supra*; *Ristow v. Ristow*, 152 Neb. 615, 41 N.W.2d 924 (1950). Additionally, paragraph C of the child support guidelines provides that deviations from the guidelines are permitted "for juveniles placed in foster care" and "whenever the application of the guidelines in an individual case would be unjust or inappropriate." Further, the Nebraska Supreme Court has held that a court may and should deviate from the child support guidelines when a parent's earning capacity exceeds her or his actual earnings and the application of the guidelines would result in an unfair and inequitable support order. *Shiers, supra*.

In this case, all of appellant's children were in foster care. Appellant worked approximately 30 hours per week and presented no credible evidence that she was unable to work more than 30 hours per week. Further, the juvenile court's remarks to appellant contained in the record reveal that the court strongly felt that appellant was able to work a full-time job. However, the juvenile court did not state in its findings the

reasons for deviating from the guidelines, nor did the court file worksheet 5 in the court file, as is required by paragraph C of the guidelines. See *Baratta v. Baratta*, 245 Neb. 103, 511 N.W.2d 104 (1994). Nonetheless, in our de novo review, we find that appellant's earning capacity exceeded her actual earnings. Such is a valid reason for this court to deviate from using appellant's actual income in determining the amount of support owed, and to use appellant's earning capacity instead. We also find that it would be unfair and inequitable for appellant to escape her child support obligations on the basis that she could not afford to pay child support when her own testimony indicates that she could earn enough to pay some support for her children, yet chose not to.

Although the juvenile court did not make a specific finding regarding the amount of appellant's earning capacity, it found that appellant had the ability to pay $144 per month in child support. Table 1 of the guidelines provides for a $144 per month child support obligation for six children where the parents' net monthly income is $650. The trial court obviously concluded appellant could work full time. Appellant testified that she earned $4.50 per hour, which would make her gross earning capacity, based on a 40-hour work week, $780 per month. Given this evidence, we cannot say that the trial court abused its discretion in setting appellant's child support obligation at $144 per month.

In her second assigned error, appellant claims that the juvenile court erred in ordering her to pay $144 per month in child support because such payment would reduce her income below the subsistence level set forth in the child support guidelines. In support of her argument, appellant cites paragraph Q of the child support guidelines, which states, "A parent's support obligation shall not reduce his or her net income below the minimum of $500, net monthly for one person, except minimum support may be ordered . . . ."

Basing appellant's net income upon earning capacity, appellant's support obligation does not reduce her net income below subsistence level. The juvenile court did not abuse its discretion in setting appellant's support obligation according to her earning capacity.

## CONCLUSION

Having found no abuse of discretion, we affirm the decision of the separate juvenile court.

AFFIRMED.