Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/28/2019 09:07 AM CDT

In re Interest of Cayden R. et al., children
under 18 years of age.
State of Nebraska, appellee, v.
Gail R., appellant.

___ N.W.2d ___

Filed May 14, 2019.    No. A-18-817.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings.
2. **Child Support: Appeal and Error.** The determination of the amount of child support is initially entrusted to the discretion of the trial court, and although on appeal the issue is tried de novo on the record, in the absence of an abuse of discretion, the trial court's award of child support will be affirmed.
3. **Child Support: Rules of the Supreme Court.** The Nebraska Child Support Guidelines apply in juvenile cases where child support is ordered.

Appeal from the Separate Juvenile Court of Lancaster County: Linda S. Porter, Judge. Affirmed.

Lea Wroblewski, of Legal Aid of Nebraska, for appellant.

Patrick F. Condon, Lancaster County Attorney, and Anna Marx for appellee.

Moore, Chief Judge, and Riedmann and Bishop, Judges.

Bishop, Judge.
Gail R. appeals from the decision of the separate juvenile court of Lancaster County ordering her to pay $50 per

- 243 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF CAYDEN R. ET AL.
Cite as 27 Neb. App. 242

month in child support for her children living in foster care. We affirm.

## BACKGROUND

Gail is the mother of five children who were removed from her home in May 2017. The juvenile court granted temporary custody of the children to the Nebraska Department of Health and Human Services (DHHS), and they were placed into foster care.

The State filed a juvenile petition on May 19, 2017, alleging that the children were within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) by reason of the faults or habits of Gail and/or because the children were in a situation dangerous to life or limb or injurious to their health or morals. The petition contained allegations of domestic violence, bodily injury to one of the children, and failure to provide a safe and stable home. The petition also included allegations against the two fathers of the children.

The State filed a second amended petition on July 28, 2017, adding an allegation that a hair follicle test for one or more of the children yielded positive results for illegal substances and removing the allegation that Gail failed to provide a safe and stable home. Both the petition and the second amended petition asked the court to make such orders as deemed proper, including "ability and liability for child support" if the children were placed out of the parental home. Because neither father is at issue in this appeal, we will only discuss them as necessary.

On October 10, 2017, one of the children was adjudicated to be within the meaning of § 43-247(3)(a) by reason of the faults or habits of that child's father and/or because that child was in a situation dangerous to life or limb or injurious to his health or morals. Although no adjudication order for the other four children or any adjudication order referencing the allegations against Gail appears in our record, the parties and the juvenile court proceeded as if there was one, and no one argues otherwise in this appeal.

- 244 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF CAYDEN R. ET AL.
Cite as 27 Neb. App. 242

On February 12, 2018, the juvenile court entered an order referring the juvenile case to a child support referee "for the purpose of findings and recommendations regarding the establishment of child support to be paid by . . . Gail" for the support of her five children in the case.

A hearing before the child support referee was held on March 21, 2018. At the hearing, the State informed the referee of its understanding that there was a court order for Gail to attend inpatient treatment for substance abuse and that "she's simply waiting for a bed." The State explained, "[B]ecause of that order, the State is simply asking for a bare minimum order, $50 a month, to begin April 1st of 2018, with one month of retroactive support representing the month of March."

The State's child support calculation was received into evidence for informational purposes; the calculation used a total monthly income of $0 for both Gail and DHHS, and suggested a monthly share of $50 per month for Gail. The State's "Cost of Care Affidavit" was received into evidence, and it states that DHHS was paying $267.68 per day for the out-of-home care for Gail's five children. A juvenile court order from February 12, 2018, was also received into evidence and states, in part, that Gail was ordered to maintain employment or other legal means of support for herself and her children, maintain a safe and stable home environment for herself and her minor children, maintain contact with DHHS and inform the case manager of any change to her address or telephone number within 48 hours of such change, have supervised visitation with her children a minimum of one time per week, attend and cooperate with individual and/or group counseling to address her "history of interpersonal violence" and the effects on the children who have been exposed to violence in the home environment, cooperate with short-term residential treatment for substance abuse and follow all recommendations, and cooperate with family support services.

Gail testified that her five children lived with her until May 2017 and that since that time, they have been in two foster

- 245 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF CAYDEN R. ET AL.
Cite as 27 Neb. App. 242

homes and a "kinship home." Gail had been ordered by the juvenile court to attend treatment for substance abuse. She was currently attending outpatient treatment twice a week, for 1 hour each time, and was waiting for an inpatient room; once there was an opening in inpatient treatment, Gail believed treatment would take 6 weeks, but she did not know for sure. Gail also had court-ordered visitation with the children and attended a domestic abuse class, "[s]o my time is kind of spread." She stated that she started with five visits per week and was "down to two"; she is required to provide food for her children during visits and to make sure that her youngest child has a "diaper change." She also stated that her domestic abuse class was once a week for 1½ hours.

At the time of the hearing, Gail did not have a permanent residence, but she was "looking into housing." She affirmed that she did not have any money for application fees or deposits for an apartment or a house. She denied having any other assets she could use to obtain housing. She did have a vehicle, but it was not insured.

Gail was court ordered to maintain employment and was currently seeking employment. When asked if she believed she had a duty to support her children, Gail responded, "I do, but my role is to be the homemaker, the caregiver," so "I'm not familiar with the full-time work." Gail acknowledged that when the children lived with her, she was a stay-at-home mother. But she "usually . . . tried to hold a part-time job" when she could. She worked part time for 6 weeks in 2017, starting at $11 per hour "and then it bounced up to 14 for two weeks." When asked why she was not working at that job anymore, Gail responded, "Because of the whole — the court system, actually. I found out that they'd took my kids two days before I went to work on Monday. So, I had a rough Monday and it just — it fell apart." She said she voluntarily left that job "so I wouldn't get fired." Gail has a high school degree but no further education or specialized training. She acknowledged that she did not have any disabilities that would keep her from working.

- 246 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF CAYDEN R. ET AL.
Cite as 27 Neb. App. 242

The child support referee filed a report on March 27, 2018. The report notes that the parties disagreed about the applicability of the Nebraska Child Support Guidelines to the present case; however, the referee, citing to a Nebraska statute and case law, found the guidelines applicable. The referee found that although Gail had no residence, only a high school degree, and a limited work history (because she was a stay-at-home mother prior to the removal of the children from her home), she had no disabilities that would prevent her from working, had held employment in the past, was currently seeking employment, and was court ordered to maintain employment or other legal means of support for herself and her children. The referee recommended that Gail's child support obligation be set at a minimum level of $50 per month beginning April 1, finding this would give her incentive to maintain some level of employment to understand the "'necessity, duty, and importance'" of supporting her children, while also allowing her to comply with her ordered short-term residential treatment for substance abuse and followup treatment. The referee did not recommend retroactive support, as requested by the State, noting that Gail is "struggling financially and may be entering short term residential treatment soon."

Gail filed an exception to the child support referee's report on April 11, 2018, claiming that the findings and recommendations (1) were not supported by the evidence, (2) were contrary to Nebraska law, (3) failed to recognize a rebuttable presumption applies because the children are placed in foster care, (4) do not support an order of minimum support as intended by Neb. Ct. R. § 4-209, and (5) are not in the best interests of the children. Gail requested a hearing before a juvenile court judge for a de novo review of the referee's report.

After a hearing on May 16, 2018, during which the bill of exceptions, including exhibits, from the child support referee hearing was received into evidence and arguments were made, the juvenile court filed its order July 25, ordering Gail

- 247 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF CAYDEN R. ET AL.
Cite as 27 Neb. App. 242

to pay child support of $50 per month for her children, with the support order commencing April 1.

Gail appeals.

## ASSIGNMENTS OF ERROR

Gail assigns, consolidated and restated, that the juvenile court erred in (1) applying the Nebraska Child Support Guidelines to a juvenile court case in which the children were placed in foster care and (2) ordering her to pay $50 per month in child support for her children.

## STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Isabel P. et al.*, 293 Neb. 62, 875 N.W.2d 848 (2016).

[2] The determination of the amount of child support is initially entrusted to the discretion of the trial court, and although on appeal the issue is tried de novo on the record, in the absence of an abuse of discretion, the trial court's award of child support will be affirmed. *In re Interest of Crystal T.*, 4 Neb. App. 503, 546 N.W.2d 77 (1996).

## ANALYSIS

[3] In *In re Interest of Tamika S. et al.*, 3 Neb. App. 624, 529 N.W.2d 147 (1995), this court held that the Nebraska Child Support Guidelines apply in juvenile cases where child support is ordered. See *In re Interest of Crystal T., supra*. See, also, Neb. Rev. Stat. § 43-290 (Reissue 2016) (when care or custody of juvenile, as described in various subsections of § 43-247, including subsection (3), is given by court to someone other than juvenile's parent, court may order that parent to pay reasonable sum that will cover support, study (medical, psychological, or psychiatric), and treatment of juvenile; if juvenile has been committed to care and custody of DHHS, DHHS shall pay costs which are not otherwise paid by juvenile's parent). Additionally, Neb. Ct. R. § 4-203 (rev.

- 248 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF CAYDEN R. ET AL.
Cite as 27 Neb. App. 242

2011) provides that *all* orders for child support obligations shall be established in accordance with the provisions of the guidelines unless the court finds that one or both parties have produced sufficient evidence to rebut the presumption that the guidelines should be applied. Section 4-203 also states that deviations from the guidelines are permissible for juveniles placed in foster care. Finally, Neb. Ct. R. § 4-222 (rev. 2011) states that if the child is residing with a third party, the court "shall order each of the parents to pay to the third party their respective amounts of child support as determined by the worksheet."

The child support guidelines shall be applied as a rebuttable presumption. § 4-203. As noted above, all orders for child support obligations shall be established in accordance with the provisions of the guidelines unless sufficiently rebutted by the evidence. See *id*. In this case, DHHS presented a child support calculation which was received for informational purposes. In its calculation, DHHS attributed a total monthly income of $0 to Gail; thus, her monthly support from table 1 ("Income Shares Formula") of the child support guidelines was $0. However, § 4-209 states:

> It is recommended that even in very low income cases, a minimum support of $50, or 10 percent of the obligor's net income, whichever is greater, per month be set. This will help to maintain information on such obligor, such as his or her address, employment, etc., and, hopefully, encourage such person to understand the necessity, duty, and importance of supporting his or her children.

And Neb. Ct. R. § 4-218 (rev. 2019) states:

> A parent's support, child care, and health care obligation shall not reduce his or her net income below the minimum of $1,041 net monthly for one person, or the poverty guidelines updated annually in the Federal Register by the U.S. Department of Health and Human Services under authority of 42 U.S.C. § 9902(2), *except minimum support may be ordered as defined in § 4-209*.

- 249 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF CAYDEN R. ET AL.
Cite as 27 Neb. App. 242

(Emphasis supplied.) In accordance with §§ 4-209 and 4-218, Gail's child support obligation was determined to be $50 per month. She claims that the purpose of the minimum support, as set forth in § 4-209, is already being met by the juvenile court order because she is already required to maintain her information (address and telephone number) and is already required to maintain employment or a legal source of income, maintain a safe and stable home, and cooperate with family services. We fail to see why this should exempt her from a minimum support order of $50 per month.

Gail also argues that a deviation from the guidelines was appropriate in this case. She claims this "is a family in crisis with substance abuse treatment needs, domestic violence counseling needs, and family support and therapy" and that "[a]dding a financial obligation that comes with . . . severe and immediate consequences for noncompliance [e.g., contempt, possible arrest and incarceration, and interest on a growing child support arrearage], is an unnecessary stressor and hurdle for the family." Brief for appellant at 9-10. Although Gail claimed at the child support referee hearing that her "time is kind of spread" because of treatment, a domestic abuse class, and visitation, her testimony was that she spent only 3½ hours per week in treatment and a domestic abuse class and that her visitations had gone from five "down to two" per week. Thus, it is clear that her time commitments were not so great that she could not work. And although she testified that she was unemployed, there was no reason she could not work. She had a high school diploma and no disabilities that would keep her from working. In fact, at the time of the children's removal from Gail's home, she had been employed for 6 weeks (and had gone from earning $11 to $14 per hour during that time), but quit because she "had a rough Monday" after the children's removal. Clearly, she is capable of working and was able to earn $11 to $14 per hour. Based on the evidence presented, Gail has not rebutted the presumption of the guidelines, and we find that no deviation was warranted.

- 250 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF CAYDEN R. ET AL.
Cite as 27 Neb. App. 242

Gail also argues that the juvenile court failed to make findings about whether a child support order of $50 was appropriate or reasonable. It is true that the juvenile court did not make specific findings in its order. However, the child support referee did make specific findings in the referee's report, and the juvenile court considered the evidence before the court, "including the Referee Report." As noted by the State in its brief, "In order for [Gail] to meet her $50.00 per month obligation, earning $11 per hour, she would have to work less than two hours per week." Brief for appellee at 11. "Factoring in the cost of care, the requirements placed upon [Gail] by the ongoing juvenile court action and her ability to work, the minimum support obligation of $50.00 per month is neither unfair nor inequitable. The support obligation is reasonable." *Id*. We agree. DHHS was paying $267.68 per day for the out-of-home care for Gail's five children, and she was only required to pay $50 per month in child support. The purpose of § 43-290, which allows the juvenile court to order a parent to pay support for a child committed to the care and custody of someone other than a parent, is "to promote parental responsibility and to provide for the most equitable use and availability of public money." Contrary to Gail's contention, the child support order is in the best interests of the children, as it will help facilitate Gail's acceptance of the financial responsibilities associated with caring for her children. Demonstrating the ability to financially contribute to the care of her children will be a favorable factor in her efforts to reunite with them.

## CONCLUSION

For the reasons stated above, we affirm the decision of the separate juvenile court ordering Gail to pay $50 per month in child support for her children living in foster care.

AFFIRMED.